# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

№ 07-CV-2049 (JFB) (AKT)
_____

JOSEPH R. ERCOLE,

Plaintiff,

VERSUS

RAY LAHOOD,

Defendant.
_____

**MEMORANDUM AND ORDER**
March 30, 2010
_____

JOSEPH F. BIANCO, District Judge:

*Pro se* plaintiff Joseph Ercole brings this action against the Secretary of the U.S. Department of Transportation, Ray LaHood,[1] alleging violations of Title VII of the 1964 Civil Rights Act; the Age Discrimination in Employment Act; the Administrative Procedure Act; the Veterans' Employment Opportunity Act; and the Civil Service Reform Act. Defendant has moved to dismiss plaintiff's Second Amended Complaint. For the reasons set forth below, the Court grants the motion, and the Second Amended Complaint is dismissed. However, the Court will provide plaintiff with one final opportunity to file an amended complaint to address the pleading defects identified in this Memorandum and Order.

## I. BACKGROUND

In deciding this motion to dismiss, the facts alleged in the Second Amended Complaint[2]

---

[1] On January 23, 2009, Ray LaHood became Secretary of the Department of Transportation. *See* Ray LaHood-U.S. Dept. of Transportation, http://www.dot.gov/bios/lahood.htm (last visited March 21, 2010). He is automatically substituted as the proper defendant under Federal Rule of Civil Procedure 25(d). The Clerk of the Court shall modify the caption accordingly.

[2] Over two hundred pages of documents—including printouts of e-mails and documents from administrative proceedings—are attached to the 41-page Second Amended Complaint. The Court may also consider these documents in deciding this motion. *See, e.g., Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005) (stating that, in resolving a motion to dismiss under Rule 12(b)(6), the court may consider "facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference"); *accord Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir.

are assumed to be true and are construed in the light most favorable to plaintiff, the non-moving party.

## A. Facts

Between 1999 and February 2008, plaintiff was employed by the U.S. Department of Transportation (DOT) as a Contract Specialist in the Procurement Department at the U.S. Merchant Marine Academy (USMMA) in Kings Point, NY. (Second Amended Complaint ("SAC") at 3; *see also* Docket 39-1, at 4, 10.) Plaintiff's claims concern essentially three series of events. First, plaintiff makes allegations regarding the use of contract employees at the USMMA and regarding Freedom of Information Act (FOIA) requests he made about those contract employees. Second, plaintiff alleges that defendant failed to promote him to a GS-11 position. Finally, plaintiff alleges that defendant acted in an "arbitrary and capricious" manner with respect to the renting of the USMMA Chapel and Melville Hall, a building on the USMMA grounds.

### 1. Use of Contract Employees in the Procurement Department

As noted above, plaintiff's first series of allegations relates to the use of contract employees at USMMA. This Court previously addressed these allegations in detail in a September 2008 Memorandum and Order ("the September 2008 M & O" or "the

---

1991). Here, however, not all the attachments are delineated with page and/or exhibit numbers. For purposes of consistency, this opinion will cite these attachments using the relevant document's docket number and page number from the ECF system.

M & O") which dismissed plaintiff's First Amended Complaint. Therefore, the Court will only describe such allegations here to the extent necessary for purposes of the current opinion.

Plaintiff worked in USMMA's Procurement Department between 1999 and 2008. He was also a naval reservist and, following the September 11, 2001 attacks, was called to active duty from October 2001 to July 2002. (SAC at 3.) Following completion of his active service, plaintiff returned to his job at USMMA. (*Id.*) While he was serving on active duty, USMMA had temporarily contracted out plaintiff's contract service position to two private contract employees of Tai Pedro Associates. (*Id.* at 3-4.) A third private contract employee was hired to work in the Procurement Department in January 2003. (*Id.* at 4.) Among other things, plaintiff contends that the contract employees were not the "most efficient organization" for the job. (*Id.* at 16.) Additionally, plaintiff contends that defendant misconstrued his authority to "'contract out' Plaintiff's position" by contracting out for over two years, instead of the six months allowed by law. (*Id.* at 16, 36.)

Plaintiff alleges that, beginning when he returned from active duty, he repeatedly sought information about the status of these contract employees. (*Id.* at 4.) On several occasions, he inquired of his supervisors as to the status of these employees and also sent a FOIA request to DOT headquarters in Washington. (*Id.*) Plaintiff alleges that he did not receive a response to this FOIA request until April 2005 and that the response did not provide the information he was seeking. (*Id.*) Plaintiff also claims that, in July 2002, he "attempted to file a discrimination complaint with Mr. Robert

Safarik, USMMA EEO Representative and Chief of Staff" but that Safarik "ignored Plaintiff" and never filed the complaint. (*Id.* at 4, 24.) By the spring of 2004, the private contract employees had stopped working in the Procurement Department. Subsequently, in January 2007, plaintiff learned, through documents obtained via another FOIA request, that the contract employee positions had been justified on the basis of plaintiff's call up to active military duty. (*Id.* at 5, 7.) Plaintiff points out that he was only on active duty for eight months, yet the contract employees were in place for over two years. (*Id.* at 5.)

2. Allegations Regarding Desired Promotion to the GS-11 Position

Plaintiff also faults defendant for failing to promote him in 2004 and 2005. In February 2004, it was announced that there existed a vacancy in the Procurement Department in paygrade GS-1102-11 ("the GS-11 position"). (Docket 39-1, at 7.) Over one month later, plaintiff applied for this position, but was told that he did not meet the position's time-in-grade requirement and that his application had been submitted after the deadline for submitting applications had passed. (*Id.* at 7, 20.) Plaintiff claims that he should have been allowed to "detail" into the GS-11 position for three months. (*Id.* at 4-5.) It can be inferred that "detail" refers to a procedure by which plaintiff would serve in the GS-11 position in his then-current grade, GS-1102-09, until he met the time-in-grade requirements, at which point he would be promoted to GS-11. (*Id.* at 4-5.) Plaintiff's supervisors, however, told plaintiff that he could not be detailed. (*Id.*)

Subsequently, although only a single vacancy had been announced, two new employees—Bridget Duffy and Max Diah—began working in the Procurement Department in pay grade GS-11. (SAC at 15.) Plaintiff appears to contend that it was improper for defendant to hire Diah because he did not meet the qualifications for the position. (*Id.*)

Nine months later, in January 2005, Ms. Duffy resigned, and plaintiff wanted to apply for her position. (*Id.* at 8.) However, a vacancy announcement was never posted, and, therefore, plaintiff was never able to apply. (*Id.* at 8.) Plaintiff appears to argue that the position was never opened because defendant "did not agree with," *inter alia*, plaintiff's FOIA request and military reserve service. (*See, e.g.*, *id.* at 7-8.)

3. Allegations Regarding Use of the Chapel and Melville Hall

Plaintiff also takes issue with defendant for actions that occurred in connection with his rental of the USMMA Chapel and Melville Hall, a building at USMMA used for events such as wedding receptions. On December 13, 2007, plaintiff signed a contract to rent Melville Hall for his wedding, which was scheduled for September 20, 2008. (Docket 39-3, at 1.) Plaintiff was charged $1,000 for use of Melville Hall. (*See id.*; *see also* SAC at 28.) Plaintiff also alleges that he was told that the fee to use the chapel was $500. (SAC at 28.)

In early 2008, plaintiff submitted a formal "suggestion" that "the U.S. Merchant Marine Academy have uniform prices in writing for use of the USMMA Chapel and Melville Hall." (Docket 39-3, at 7.) Plaintiff received a response from Rear Admiral Christopher McMahon, the USMMA's Deputy Superintendent. The response stated that

3

"[u]niform pricing is impossible because each function includes diverse requirements including number of people, type of food expected, type of beverage service, and type of service." (*Id.* at 6.) Plaintiff apparently replied to Admiral McMahon's response; attached to the Second Amended Complaint is a printout of an e-mail written by plaintiff which states, among other things, that "various fee rates have been provided to different people recently ranging from $300.00 to $500.00 for use of the USMMA Chapel for a marriage ceremony. That's calling out for a lawsuit!" (*Id.* at 5.) In this e-mail, plaintiff also accuses the USMMA of acting in an "arbitrary and capricious" manner. (*Id.*)

In the fall of 2008, a staff sergeant "Ralph," apparently an active-duty military member stationed at USMMA, "on behalf of Plaintiff sought to use the USMMA chapel for a marriage ceremony." (SAC at 28-29.) Staff Sgt. Ralph was told that it would cost $200 to use the chapel, not $500 as plaintiff had been told. (*Id.* at 29.) Plaintiff further states that "other users" of Melville Hall were charged only $500, not the $1,000 charged to plaintiff. (*Id.*)

B. Procedural History

This case began on May 18, 2007 when plaintiff filed the initial complaint. (Docket 1.) Two weeks later, on June 1, 2007, plaintiff filed an amended complaint. (Docket 7.) The First Amended Complaint asserted claims under Title VII, the Uniform Services Employment and Reemployment Rights Act (USERRA), and FOIA.

On November 2, 2007, defendant moved to dismiss. (Docket 18.) The Court granted that motion in a September 10, 2008 Memorandum and Order. (Docket 37.) With respect to plaintiff's Title VII claims, the Court noted that it was unclear from the First Amended Complaint whether plaintiff had exhausted his administrative remedies and that it was unclear "when, if at all, any discriminatory conduct occurred." (See M & O, at 7.) Nonetheless, the Court dismissed plaintiff's Title VII claim without prejudice and allowed plaintiff leave to replead. (*Id.* at 8.) Additionally, the Court dismissed plaintiff's USERRA claims for lack of subject matter jurisdiction. (*Id.* at 8-9.) The Court also explained that it lacked jurisdiction to review the Merit Systems Protection Board's (MSPB) findings regarding plaintiff because the U.S. Court of Appeals for the Federal Circuit–not the federal district courts–had jurisdiction to review MSPB decisions. (*Id.*) The Court also dismissed plaintiff's FOIA claim because plaintiff had, in fact, received responsive documents, albeit not as quickly as plaintiff would have liked. (*Id.* at 9.) Finally, the Court dismissed a claim asserted by plaintiff on behalf of "U.S. Citizens and Taxpayers" for lack of standing. (*Id.* 9-11.) The Court however, granted plaintiff leave to replead his Title VII claim and instructed plaintiff that, if he filed a second amended complaint, that complaint needed to allege how plaintiff exhausted his administrative remedies and adequately state a claim under Federal Rule of Civil Procedure 12(b)(6). (*Id.* at 11.)

Six days after issuing the opinion, the Court held an in-person conference with plaintiff and defendant's counsel. (*See* Docket 38.) As set forth on the record, the purpose of the conference was to discuss the defects in plaintiff's Title VII claim in the then-recently dismissed complaint so that plaintiff could

4

correct them in any amended complaint. The Court specifically explained that plaintiff needed to demonstrate that he had exhausted his administrative remedies and that any future complaint needed to provide defendant sufficient notice regarding the type of discrimination alleged to have occurred. On the exhaustion issue, plaintiff advised the Court that he had an administrative complaint currently pending. The Court stated that plaintiff could either try to amend his complaint and demonstrate how he had exhausted or voluntarily discontinue the action without prejudice to refile once exhaustion was complete. Plaintiff chose to file an amended complaint.

Plaintiff filed the Second Amended Complaint on November 17, 2008. (Docket 39.) On December 15, 2008, defendant requested a pre-motion conference in anticipation of moving to dismiss. (Docket 41.) The Court held a pre-motion conference on January 6, 2009. (Docket 44.) At the conference, plaintiff requested additional time to await the outcome of the pending administrative proceedings. With defendant's consent, the Court granted plaintiff 30 days to submit a status letter.

At the conclusion of that 30-day period, plaintiff requested an additional extension to resolve exhaustion issues. (Docket 45.) The Court granted this extension. (Docket 47.) However, defendant requested to move forward with the filing of its motion to dismiss, arguing that the exhaustion issues would not be resolved for some time and that, in any event, the Second Amended Complaint was subject to dismissal on non-exhaustion grounds. (Docket 46.) The Court held another conference on February 19, 2009 at which it stated that it would let defendant move to dismiss and, accordingly, set a briefing schedule. (Docket 49.)

On March 2, 2009, plaintiff submitted to the Court an EEOC judgment and order dated February 12, 2009 that disposed of his administrative claim. (*See* Docket 50.) By letter dated April 4, 2009, plaintiff requested to file a third amended complaint, and the Court granted this request. (Docket 57, 58.) Instead of filing the complaint, however, plaintiff filed "A Motion to Compel Discovery." (Docket 59.) Defendant opposed this motion and reiterated his intention to move to dismiss. (Docket 60.) Magistrate Judge Tomlinson then denied plaintiff's motion to compel pending the outcome of the instant motion. (Docket 61.) Defendant filed the instant motion to dismiss on July 20, 2009. (Docket 65.) Plaintiff filed an opposition on August 12, 2009 (Docket 67), and defendant filed a reply on September 4, 2009. (Docket 68.) The motion is fully submitted.

II. STANDARD OF REVIEW

Defendant has moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court recently clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), setting forth a two-pronged approach for courts deciding a motion to dismiss. The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S. Ct. at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 1949 (quoting and citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

Moreover, as the Second Circuit recently emphasized in *Sealed Plaintiff v. Sealed Defendant*, "[o]n occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds pro se, . . . a court is obliged to construe his pleadings liberally . . . This obligation entails, at the very least, a permissive application of the rules governing the form of pleadings . . . . This is particularly so when the pro se plaintiff alleges that her civil rights have been violated. Accordingly, the dismissal of a pro se claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." 537 F.3d 185, 191 (2d Cir. 2008) (citations and quotation marks omitted); *see also Weixel v. Bd. of Educ. of the City of N.Y.*, 287 F.3d 138, 146 (2d Cir. 2002) (holding that when plaintiff is appearing *pro se*, the Court shall "'construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.'") (quoting *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (alterations in original)); accord *Sharpe v. Conole*, 386 F.3d 483, 484 (2d Cir. 2004).

### III. DISCUSSION

The Court construes the Second Amended Complaint as asserting the following: (i) claims under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e-16, and under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 631 and § 633a, relating to the alleged failure to promote plaintiff to the GS-11 position; (ii) a Title VII and ADEA claim relating to the use of the USMMA Chapel and Melville Hall; (iii) a claim under the Administrative Procedure Act (APA) relating to the use of contract employees at USMMA; (iv) an APA claim relating to the price USMMA charged plaintiff for renting the chapel and Melville Hall; (v) a claim under the Veterans' Employment Opportunity Act of 1998 (VEOA), 5 U.S.C. § 3330a; and (vi) a claim under 5 U.S.C. §§ 2301-02, part of the Civil Service Reform Act (CSRA). Plaintiff's opposition to the instant motion supports the Court's interpretation of plaintiff's allegations. On page 12 of his opposition, plaintiff states that, "[i]n sum," his "First Claim For Relief" involves "Discrimination to Plaintiff as employee in

6

violation of above referenced laws," including *inter alia*, Title VII and the VEOA;[3] his "Second Claim For Relief" is "Discrimination to Plaintiff for Rental of Melville Hall"; and his "Third Claim for Relief" is "Discrimination to plaintiff for requested rental of Chapel." Below the "Third Claim for Relief," plaintiff also cites to 5 U.S.C. § 2302(b), part of the CSRA, and lists a number of "[p]robihited personnel practices."

A. Discrimination Claims

Plaintiff asserts claims under Title VII and the ADEA regarding the following: (i) the failure to promote him to a GS-11 position and (ii) the fees charged for use of the USMMA Chapel and Melville Hall. As set forth below, these claims must be dismissed because plaintiff has not adequately exhausted his administrative remedies. However, the Court will allow plaintiff one final chance to replead these claims and attempt to establish why the exhaustion requirements should be equitably tolled.

Before filing a lawsuit in federal court under either Title VII or the Age Discrimination in Employment Act, a plaintiff must first exhaust his administrative remedies. *See, e.g.*, *Briones v. Runyon*, 101 F.3d 287, 289 (2d Cir. 1996) (explaining that exhaustion requirement applies to both Title VII and ADEA). For federal employees, the procedures for exhausting these administrative remedies are contained in 42 U.S.C. § 2000e-16 and 29 C.F.R. part 1614. *See* 42 U.S.C. § 2000e-16; 29 C.F.R. § 1614.103 (stating that complaints under, *inter alia*, Title VII and the ADEA, "shall be processed in accordance with this part").

These procedures require an employee who believes he or she has been discriminated against to take certain actions within specified time limits. Specifically, the employee must first consult with an EEO counselor within 45 days of the allegedly discriminatory event, *see* 29 C.F.R. § 1614.105(a)(1), and then file a formal complaint within fifteen days of receiving notice that the counselor has failed to resolve the claim. *See* 29 C.F.R. § 1614.105(d). After the filing of an administrative complaint, the employee can bring a federal lawsuit only within (i) 90 days of receiving notice of a final administrative decision, or (ii) 180 days of the filing of the administrative complaint if there has been no administrative action. 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407; *see also, e.g.*, *Gelin v. Snow*, No. 02 Civ. 9641(BSJ), 2005 WL 2456742, at *6 (S.D.N.Y. Sept. 30, 2005).

Here, the Second Amended Complaint fails to comply with these procedural requirements. As a threshold matter, there is no evidence that plaintiff has even attempted to exhaust his administrative remedies for his claim regarding the allegedly discriminatory rates charged for renting Melville Hall and the Chapel.[4]

---

[3] Both the Second Amended Complaint and plaintiff's opposition also cite to the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4031, *et seq*. As explained in the September 10, 2008 M & O, however, this Court lacks jurisdiction to consider a USERRA claim because jurisdiction for such claims lies with the MSPB and because plaintiff's case does not present a "mixed appeal." (*See* M & O, at 8-9 & n.4.)

[4] Nor is it clear how these allegations constitute an "adverse employment action," as required by Title VII and the ADEA. *See, e.g.*, *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009).

7

Nor has plaintiff adequately exhausted his failure to promote claim. While plaintiff alludes to a "discrimination complaint" he attempted to file with Robert Safarik of the USMMA, this occurred well before the 2004-05 period relevant to the claim. (*See* SAC at 24; Docket 39-2, at 47.)

Nor do the administrative proceedings that occurred in 2008 and 2009 suffice. Plaintiff initiated these proceedings by contacting an EEO counselor on February 5, 2008. He complained about both the use of contract employees and defendant's failure to promote him. (Docket 39-2, at 44-49; *see also* Docket 39-1, at 54-57 (administrative discrimination complaint).) According to plaintiff's administrative complaint, the use of contract employees occurred between 2002 and 2004, and the failure to promote plaintiff to a vacant GS-11 position occurred in April 2004 and January 2005. As such, plaintiff did not contact the EEO counselor within the 45-day time limit set out in 29 C.F.R. § 1614.105(a)(1). Therefore, plaintiff has not exhausted his administrative remedies in a timely manner, and his Title VII claims are subject to dismissal. *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001) (stating that the "45-day period serves as a statute of limitations; thus, as a general rule, claims alleging conduct that occurred more than 45 days prior to the employee's initiation of administrative review are time-barred.").[5]

However, the 45-day time limit is subject to equitable tolling. *Bruce v. U.S. Dep't of Justice*, 314 F.3d 71, 74 (2d Cir. 2002); *Boos v. Runyon*, 201 F.3d 178, 184-85 (2d Cir. 2000) (considering whether equitable tolling should apply to 45-day time limit for contacting agency EEO counselor). "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply.'" *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003) (quoting *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)); *see also South v. Saab Cars USA, Inc.*, 28 F.3d 9, 12 (2d Cir. 1994) (noting that the principles of equitable tolling do not extend to what "is at best a garden variety claim of excusable neglect") (citation and quotation marks omitted). The doctrine is "highly case-specific," and the "burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff." *Boos*, 201 F.3d at 184-85; *Smith v. Chase Manhattan Bank*, No. 97-CV-4507 (LMM), 1998 WL 642930, at *3 (S.D.N.Y. Sept. 18, 1998) ("[A] court must consider the equities of the excuse offered to explain the delay and may extend

---

[5] Defendant argues that plaintiff has also failed to comply with 42 U.S.C. § 2000e-16(c) and 29 C.F.R. § 1614.407, which require a plaintiff to file suit in federal court within 90 days of the final administrative decision on his complaint or within 180 days of filing the administrative complaint, if no administrative action has been taken. Defendant's argument is based on the fact that plaintiff filed the Second Amended Complaint several months before administrative proceedings had concluded. This argument is without merit here. At the time of the administrative decision, plaintiff already had filed a Second Amended Complaint with this claim in it. Thus, there was no need for him to re-file a lawsuit to be in compliance with these timing requirements. Therefore, plaintiff's claim is not time barred under these provisions.

the limitations period if warranted.").[6]

Thus, while plaintiff's Title VII claims will be dismissed for failure to exhaust, the Court, in an abundance of caution,[7] will allow plaintiff one final chance to replead his discrimination claims. In doing so, plaintiff must explain why equitable principles should excuse the untimeliness issues identified above.[8]

Additionally, any amended complaint must allege a plausible claim of discrimination and "'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz v. Sorema*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see Gilman v. Inner City Broad. Corp.*, No. 08 Civ. 8909(LAP), 2009 WL 3003244, at *3 (S.D.N.Y. Sept. 18, 2009) (discussing pleading standards in discrimination cases following *Iqbal* and *Twombly*). Plaintiff's First Amended Complaint failed to meet these standards, (M & O, at 7-8), and the Second Amended Complaint fails as well. The factual basis of plaintiff's discrimination claims is not at all clear from the Second Amended Complaint. Instead, plaintiff alleges in conclusory fashion that "[d]efendant discriminated against Plaintiff based on age (Plaintiff is over 40 years), skin color, National Origin, Race, military status as a Navy Reserve (SELRES), by not timely responding to Plaintiff's FOIA and incorrectly responding to FOIA by lying to plaintiff, by structuring the office employment positions against Plaintiff, and among other forms of discrimination in the paragraph ahead." (SAC at 8.) Such conclusory allegations—which are nearly identical to the allegations in the First Amended Complaint—are insufficient to state a discrimination claim, even where the

---

[6] The Court also notes that "[a]n agency," such as the Department of Transportation, here, "waives a timeliness objection by making an express finding that the complaint was timely or failing to appeal an EEOC determination of timeliness." *Bruce*, 314 F.3d at 74; *Briones v. Runyon*, 101 F.3d 287, 290-91 (2d Cir. 1996). However, plaintiff has not presented any evidence that the DOT made such a finding or that it failed to appeal an EEOC determination of timeliness. The fact that DOT investigated and acted upon plaintiff's administrative complaint does not mean that DOT waived a timeliness objection. *Cf. Belgrave v. Pena*, 254 F.3d 384, 387 (2d Cir. 2001) (stating that agency does not waive a timeliness objection merely by accepting and investigating the complaint); *Lanham v. Shinseki*, 662 F. Supp. 2d 238, 242-43 (D. Conn. 2009) ("However, where, as here, no agency has made any express finding about timeliness, the *Briones* waiver rule does not apply." (citing *Belgrave*, 254 F.3d at 386)).

[7] *Cf. Bisson v. Martin Luther King Jr. Health Clinic*, No. 07-5416-cv, 2008 WL 4951045, at *2 (2d Cir. Nov. 20, 2008) (summary order) (remanding case to district court to consider whether equitable tolling should apply to time-barred claim).

[8] Plaintiff has stated that he did not learn until January 2007—via a FOIA response—that USMMA had used plaintiff's military mobilization to justify its use of contract employees. (*See* SAC at 7.) This fact is, standing alone, insufficient to justify equitable tolling.

First, plaintiff did not contact the EEO counselor until February 2008, which is well more than 45 days beyond January 2007. Second, the use of contract employees during plaintiff's mobilization is completely unrelated to plaintiff's failure to promote claim. In any event, it is unclear how the FOIA response made plaintiff aware of any discrimination by defendant on the basis of a protected class such as age, race, gender, or national origin.

9

plaintiff is *pro se*. *See, e.g.*, *Reyes v. Fairfield Props.*, 661 F. Supp. 2d 249, 269 (E.D.N.Y. 2009) ("No identification of particular events or facts underlying the race-based discrimination claims is set forth in the amended complaint, and thus the claim is properly dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure."); *Wei Hong Zheng v. Wong*, No. 07-CV-4768 (FB)(JO), 2009 WL 2601313, at *7 (E.D.N.Y. Aug. 24, 2009) (dismissing sex discrimination claim because complaint contained no factual allegations to support claim); *Delgado v. Triborough Bridge & Tunnel Auth.*, 485 F. Supp. 2d 453, 463 (S.D.N.Y. 2007) ("A complaint consisting only of assertions, setting forth no specific facts upon which a court could find a plausible violation of Title VII, must be dismissed for failure to state a claim under Rule 12(b)(6).").[9]

Similarly, while the documents attached to the complaint contain allegations of discrimination, these allegations do not provide a plausible basis for inferring that plaintiff was discriminated against. (*See, e.g.*, Docket 39-3, at 13 ("I see I would have been promoted if I was not of Italian ethnicity, same as Frank Todesco my supervisor (discussion took place between Edward Wallace and Frank Todesco that he's hiring mainly Italians, i.e. myself, Petero DeNicola, etc.)").) In short, to survive a motion to dismiss, any future amended complaint must allege (1) the adverse employment action plaintiff complains of, and (2) the basis for plaintiff's discrimination claim.

---

[9] Furthermore, the Court again notes, as it noted in the September 2008 M & O, that plaintiff's status as a military reservist is insufficient to establish that he meets Title VII's requirement that he be a "member of a protected class."

B. APA Claims

The Court construes the Second Amended Complaint as asserting two APA claims. The first claim is based on the use of contract employees at USMMA. The second is based on the policies regarding rental of Melville Hall and the Chapel. As set forth below, both must be dismissed.

1. Applicable Law

"[T]he Administrative Procedure Act provides that '[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof,' unless review is precluded by statute or the complained-of decision was committed to agency discretion." *Ruiz v. Mukasey*, 552 F.3d 269, 273 (2d Cir. 2009) (quoting 5 U.S.C. § 702) (internal citations omitted). The APA empowers federal courts to "compel agency action unlawfully withheld or unreasonably delayed; and hold unlawful and set aside agency action, findings, and conclusions found to be," *inter alia*, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* 5 U.S.C. § 706. Principles of sovereign immunity, however, prevent plaintiffs from seeking money damages under the APA. *See Adeleke v. United States*, 355 F.3d 144, 152 n.7 (2d Cir. 2008). *See generally* 5 U.S.C. § 702.

2. Application

a. Contracting Out

Plaintiff's first APA claim is based on the use of contract employees in the Procurement Department at the USMMA between 2002 and 2004. This claim fails because plaintiff does

10

not have standing to assert it.

### i. Standing

To have standing to bring a claim under the APA, a plaintiff must meet both the standing requirements contained in Article III of the U.S. Constitution and the APA-specific "prudential" standing requirements. *See, e.g.*, *Baur v. Veneman*, 352 F.3d 625, 636 (2d Cir. 2003).

"Article III of the Constitution limits the judicial power of the United States to the resolution of cases and controversies. This limitation is effectuated through the requirement of standing." *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 489 (2d Cir. 2009) (citing U.S. Const. art. III, § 2 and *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471-72 (1982)). "It is axiomatic that '[t]here are three Article III standing requirements: (1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision.'" *Cooper*, 577 F.3d at 489 (quoting *Kendall v. Employees Ret. Plan of Avon Prods.*, 561 F.3d 112, 118 (2d Cir. 2009)); *see also Lamar Adver. of Penn, LLC v. Town of Orchard Park, N.Y.*, 356 F.3d 365, 373 (2d Cir. 2004) ("To meet Article III's constitutional requirements for standing, a plaintiff must allege an actual or threatened injury to himself that is fairly traceable to the allegedly unlawful conduct of the defendant." (citations and quotation marks omitted)).

To meet Article III's injury in fact requirement, plainitff's alleged injury "'must be 'concrete and particularized' as well as 'actual or imminent, not conjectural or hypothetical.'" *Baur*, 352 F.3d at 632 (2d Cir. 2003) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)); *see, e.g.*, *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 89 (2d Cir. 2009) (finding that plaintiffs had adequately articulated Article III injury by alleging that they have paid higher tolls as a result of defendant's policy). Furthermore, the alleged injury must "affect the plaintiff in a personal and individual way to confirm that the plaintiff has a personal stake in the controversy and avoid having the federal courts serve as merely publicly funded forums for the ventilation of public grievances or the refinement of jurisprudential understanding." *Baur*, 352 F.3d at 632 (internal quotations and citations omitted).

Here, plaintiff has not alleged that defendant's decision to use contract employees caused him the "concrete . . . particularized" injury that Article III requires. Viewing the complaint in a light most favorable to plaintiff, defendant used plaintiff's call up to active military duty as an excuse to hire contract employees and then continued to use these employees for a time after plaintiff returned to his civilian job. However, plaintiff does not allege any concrete injury resulting from the use of these contract employees, such as, for example, a loss of pay or benefits. *Cf. Nat'l Weather Serv. Employees Org., v. Brown*, 18 F.3d 986, 989 (2d Cir. 1994) ("In this case, plaintiffs have established that the scheduled moves will cause direct injury to at least some of their constituent workers who would be forced to relocate or undergo long commutes."); *Courtney v. Smith*, 297 F.3d 455, 460 (6th Cir. 2002) (indicating that former employees of military base whose jobs were outsourced could not meet Article III standing requirements but ultimately deciding case on prudential standing grounds); *Am. Fed'n of*

*Gov't Employees, Local 2119 v. Cohen*, 171 F.3d 460, 466 (7th Cir. 1999) (finding plaintiffs had adequately alleged injury in fact because they alleged that reduction in force, which occurred because of Army contracting decision, caused their demotion to "less skilled . . . and lower paying positions"). Indeed, plaintiff acknowledges that USMMA stopped using the contract employees in 2004, and plaintiff remained employed at USMMA until 2008. To the extent plaintiff claims to have been injured because defendant failed to comply with applicable law and regulations, that allegation is insufficient to establish Article III standing. *See Fulani v. Bentsen*, 35 F.3d 49, 51 (2d Cir. 1994) ("Thus, 'an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court.'" (quoting *Allen v. Wright*, 468 U.S. 737, 754 (1984))). In sum, plaintiff has failed to establish the injury in fact necessary to have standing under Article III.

Because plaintiff has failed to establish Article III standing, the Court need not decide whether plaintiff meets the APA's prudential standing requirements. *See In re U.S. Catholic Conference*, 885 F.2d 1020, 1029 n.2 (2d Cir. 1989) ("Because we hold that the . . . plaintiffs have not established an injury in fact, we need not decide whether they are 'arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" (quoting *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 396 (1987))).

However, in an abundance of caution, the Court will address the APA's prudential standing requirements. To meet the APA's prudential standing requirements, plaintiff needs to show that he "'falls within the zone-of-interests sought to be protected by the statutory provision whose violation forms the legal basis for his complaint.'" *Baur*, 352 F.3d at 636 (quoting *Lujan*, 497 U.S. at 883). This "test is not meant to be especially demanding" and does not require that Congress, in passing a statute, intended to benefit the plaintiff. *See Clarke*, 479 U.S. at 399. If, however, "the plaintiff's interests are only marginally related to or are inconsistent with the interests that the statute arguably protects, then the plaintiff lacks standing." *Int'l Union, Sec., Police, & Fire Prof'ls of Ame. (SPFPA) v. U.S. Marshal's Serv.*, 350 F. Supp. 2d 522, 532 (S.D.N.Y. 2004).

As a threshold matter, the Second Amended Complaint does not explicitly identify any statute that forms the basis for plaintiff's claim. On page 16 of the Second Amended Complaint, however, plaintiff alludes to an unnamed provision that requires "(prior to Defendant taking action to contract out with Tai Pedro employees at the USMMA) in house bid on functions employing ten (10) or more workers be based on 'most efficient organization' and allow contracting out only if the projected savings from contractor performance would be at least ten percent (10%) or ten million dollars ($10 Mil.) The Defendant cannot justify the Congressional 'most efficient organization.'" (SAC at 16 (alterations in original).)

The Court's independent research reveals that 41 U.S.C. § 439 uses language similar to the language used by plaintiff in the Second Amended Complaint.[10] That statute prohibits

---

[10] Another statute, 10 U.S.C. § 2461 uses similar language. That statute, however, is only applicable to the Department of Defense and is, thus, plainly inapplicable here because plaintiff worked for the Department of Transportation. §

12

a "function of an executive agency performed by 10 or more civilian employees" from "be[ing] converted, in whole or in part, to performance by a contractor unless the conversion is based on results of a public-private competition that," *inter alia*,

> creates an agency tender, including a most efficient organization plan,

§ 439(a)(1)(B), and

> requires continued performance of the function by agency civilian employees unless the difference in the cost of performance of the function by a contractor compared to the cost of performance of the function by civilian employees would, over all performance periods required by the solicitation, be equal to or exceed the lesser of 10 percent of the personnel-related costs for performance of that function in the agency tender; or $10,000,000.

§ 439(a)(1)(F).

Plaintiff is not within the zone of interests sought to be protected by this statute. First, the statute limits the "convert[ing]" of agency functions performed by ten or more civilian employees to performance by contractors. Here, plaintiff claims only that contract employees were hired to perform his role while he was away and that they continued to work at USMMA for a time after plaintiff returned from military duty. He does not allege that his position was "converted" to a contractor position. Second, while the Court has not found any authority applying § 439, plaintiffs challenging even wholesale contracting out decisions have been unable to establish prudential standing under similar statutes. 10 U.S.C. § 2461, for example, contains, in relevant part, nearly identical language to § 439 but applies to the Department of Defense. In *Courtney v. Smith*, 297 F.3d 455 (6th Cir. 2002), plaintiffs brought suit under the APA to challenge the contracting out of jobs at an Ohio air force base. They attempted to demonstrate that they fell within the zone of interests of a number of statutes, including § 2461. In rejecting their argument, the Sixth Circuit stated that § 2461 was intended to foster government efficiency and to ensure that the government "procure[s] its goods and services in the most economical way possible." 297 F.3d at 466. Thus, government employees challenging "contracting out" decisions do not fall within the zone of interests protected by these statutes. *See id.* at 467 ("But we have found no legislative history, nor have the plaintiffs cited any, indicating that this provision was intended to preserve federal employment. On the contrary, § 2461 . . . recognizes that the DOD will likely transfer work to private contractors in order to increase government efficiency."); *see also Nat'l Fed'n of Fed. Employees v. Cheney*, 883 F.2d 1038, 1043-54 (D.C. Cir. 1989) (finding Department of the Army employees lacked prudential standing to challenge contracting out decision); *Am. Fed'n of Govt. Employees AFL-CIO v. Babbitt*, 143 F. Supp. 2d 927, 940 (S.D. Ohio 2001) ("The Plaintiffs argue that their interests in fairness [and] government efficiency . . . are reflected in . . . 10 U.S.C. § 2461, *et seq.* . . .

---

2461 (prohibiting a "function of the Department of Defense performed by Department of Defense civilian employees" from being contracted out unless specified requirements are met). Nonetheless, given the similarity in language between the two statutes, the Court will use case law interpreting § 2461 to interpret § 439. *See infra.*

13

Upon review, the Court concludes that the Plaintiffs' interests in fairness, cost-efficiency and obtaining 'value' for the public constitute nothing more than 'generalized grievances,' which are insufficient to satisfy prudential standing requirements."); *cf. Cohen*, 171 F.3d at 473-75 (finding that employees of Rock Island Arsenal could not establish prudential standing under various procurement statutes but could establish prudential standing under the Arsenal Act, 10 U.S.C. § 4532). Similarly, here, there is no evidence that plaintiff falls within the zone of interests sought to be protected by § 439. In sum, even if plaintiff could establish Article III standing to challenge USMMA's decision to use contract employees, he cannot establish prudential standing. Accordingly, this claim must be dismissed.

### b. Use of Chapel and Melville Hall

Plaintiff also asserts that he is entitled to relief under the APA because the USMMA acted in an "arbitrary and capricious" manner in setting rates for the rental of Melville Hall and the USMMA Chapel. This claim must be dismissed because plaintiff lacks prudential standing and because, in any event, the "no law to apply" exception to APA review applies.

### 1. Standing

The Court will assume *arguendo* that plaintiff can meet the Article III standing requirements for this claim. However, as noted above, plaintiff must also show he "'falls within the zone-of-interests sought to be protected by the statutory provision whose violation forms the legal basis for his complaint.'" *Baur*, 352 F.3d at 636 (quoting *Lujan*, 497 U.S. at 883). Again, plaintiff has not identified any statutory provision "whose violation forms the legal basis" for his claim. Additionally, the Court's independent research has not revealed a statute which even arguably includes the uniform pricing of facilities at the USMMA within its "zone of interests." Accordingly, this claim must also be dismissed for lack of standing.

### 2. Reviewability

Even if plaintiff could establish standing, however, the Court would dismiss his claim because defendant's actions regarding pricing at the USMMA facilities are committed to agency discretion by law, and judicial review is, therefore, not available.

When a plaintiff seeks judicial review of agency action, there is a "strong presumption" that review is available under the APA. *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009) (internal quotations and citations omitted). "However, review under the APA may be excepted where: (i) 'statutes preclude judicial review;' or (ii) 'agency action is committed to agency discretion by law.'" *Id.* (quoting *Natural Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006)); *see also* 5 U.S.C. § 701(a). The "committed to agency discretion by law" exception to APA review applies "'only in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Id.* at 144 (quoting *Sharkey v. Quarantillo*, 541 F.3d 75, 91 (2d Cir. 2008). Nonetheless, an APA plaintiff may not obtain review simply by claiming an agency acted in an arbitrary and capricious manner without identifying a statute to guide the agency's discretion. *Lunney v. United States*, 319 F.3d 550, 558 & n.5 (2d Cir. 2003) (requiring a plaintiff to "specify some statute or regulation that would limit the [relevant agency's] discretion in this matter" and explaining that

the APA's "arbitrary and capricious" standard "cannot be sufficient by itself to provide the requisite 'meaningful standard' for courts to apply in evaluating the legality of agency action"); *see also Heckler v. Chaney*, 470 U.S. 821, 830 (1985) (stating that APA "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion"); *Schneider v. Feinberg*, 345 F.3d 135, 149 (2d Cir. 2003) ("Here, there is no law to apply because no standard of review—other than the APA's 'arbitrary and capricious' standard itself—governs.").

Here, plaintiff, again, has not identified, either in the complaint or in his opposition to the motion to dismiss, any standard that governs the defendant's actions in administering the USMMA. In his opposition papers, plaintiff makes a general claim that "[t]here are limitations to Melville Hall in writing" and promises that "as this action progresses[,] Plaintiff will provide them to the Defendant if Defendant does not have them accessible . . . ." (Opp. at 32.)[11] Defendants, however, cite to 46 U.S.C. § 51301 as the relevant statute. That statute provides:

> The Secretary of Transportation shall maintain the United States Merchant Marine Academy to provide instruction to individuals to prepare them for service in the merchant marine of the United States.

A number of additional provisions in Title 46 of the U.S. Code and in the Code of Federal Regulations also regulate the governance of the USMMA. Specifically, 46 U.S.C. §§ 51302-17 govern, *inter alia*, uniforms, textbook, and transportation allowances; the status of USMMA midshipmen in the Naval Reserve; and the employment of adjunct professors. Similarly, 46 C.F.R. §§ 310.50-310.67 provide standards for, *inter alia*, admission of students to the USMMA, training and instruction of USMMA students, and the service obligations that USMMA students incur. *See* 46 C.F.R. § 310.50 ("The regulations in this subpart govern the nomination, admission, and appointment of midshipmen to the United States Merchant Marine Academy."). Additionally, 46 C.F.R. §§ 386.1-386.25 regulate the public buildings and grounds at the USMMA. For example, § 386.1 provides standards for hours of admission to the USMMA property; § 386.9 prohibits gambling on the USMMA grounds; and § 386.19 bans dogs—with the exception of guide dogs—from the USMMA.

None of these statutes or regulations, however, limit defendant's discretion with respect to the renting of Melville Hall and the USMMA Chapel. Instead, it appears these matters are committed to the discretion of defendant, and, as such, APA review is unavailable. *See Lunney*, 319 F.3d at 559 (finding "no law to apply" in case where plaintiff sought to have Medal of Honor transferred to recipient's alleged next of kin); *cf. Christianson v. Hauptman*, 991 F.2d 59, (2d Cir. 1993) (finding plaintiff could obtain judicial review of National Park Service regulation regarding use of seaplanes on Fire Island National Seashore (FINS) because statute governing management of FINS "limit[ed] scope of [agency's] authority to the

---

[11] Plaintiff also refers to exhibits showing "some limitations as per the Melville Hall agreement." (*Id.*) However, in its review of the exhibits attached to the Second Amended Complaint, the Court did not find any statute, regulation, or other generally applicable limitations to the use of Melville Hall.

15

environmental preservation of the area").

Thus, plaintiff's APA claim relating to the rates charged for rental of USMMA facilities is dismissed. The Court, however, will allow plaintiff leave to replead. In doing so, he must provide the Court with any "limitations" (*See* Opp. at 32) on the use of the facilities or otherwise demonstrate to the Court that review is somehow available and that he meets the APA's prudential standing requirements.

Any amended complaint must also specify the relief sought under the APA. In the Second Amended Complaint, which is currently before the Court, it seems that plaintiff seeks money damages. (*See, e.g.*, Opp. at 15 ("Plaintiff's fees for Melville Hall and Chapel are not the same lower rates as to others and Plaintiff seeks reimbursement and damages for Defendant's actions.").) However, money damages are not available under the APA. *See Ward v. Brown*, 22 F.3d 516, 520 (2d Cir. 1994) ("[T]he APA does not waive sovereign immunity for money damages claims.").

### C. VEOA

Plaintiff also brings a claim under the Veterans' Employment Opportunity Act ("VEOA"), 5 U.S.C. § 3330a, *et seq*. This claim must be dismissed because plaintiff has not followed the administrative procedures for bringing a VEOA claim.

The VEOA provides "'preference eligible veterans with a method for seeking redress where their veterans' preference rights have been violated in hiring decisions made by the federal government.'" *Conyers v. Rossides*, 558 F.3d 137, 148 (2d Cir. 2009) (quoting *Kirkendall v. Dep't of Army*, 479 F.3d 830, 837 (Fed Cir. 2007) (en banc)).

To obtain relief under the VEOA, "[a] preference eligible who alleges that an agency has violated such individual's rights under any statute or regulation relating to veterans' preference may file a complaint with the Secretary of Labor." 5 U.S.C. § 3330a(a)(1)(A). The complaint must be filed within 60 days after the alleged violation. § 3330a(a)(2)(A). "If the Secretary of Labor is unable to resolve a complaint . . . within 60 days, the complainant may" appeal to the MSPB. § 3330a(d). Alternatively, once a complainant takes an appeal to the MSPB, he may elect to forego the appeal and pursue an action in federal district court. § 3330b; *see also Conyers*, 558 F.3d at 149 ("After taking such an appeal, § 3330b . . . allows a preference eligible person, '[i]n lieu of continuing the administrative redress procedure . . . [to] elect . . . to terminate those administrative proceedings and file an action with the appropriate United States district court . . . .'"). The Court of Appeals for the Federal Circuit has held that the VEOA's exhaustion requirements are non-jurisdictional and, thus, may be equitably tolled in appropriate circumstances. *Kirkendall*, 479 F.3d at 843-44.

Here, plaintiff's VEOA claim must be dismissed. First, plaintiff has not alleged that he has either filed a complaint with the Department of Labor or appealed the Department of Labor's decision regarding that complaint to the MSPB. Therefore, he has not exhausted his administrative remedies. Second, it is unclear from the Second Amended Complaint what hiring rights of the plaintiff have been violated. Plaintiff was employed at USMMA throughout the relevant period. *Cf. Conyers*, 558 F.3d at 148-49 (addressing claim of veteran who had

unsuccessfully applied for position as an airport security screener); *Kirkendall v. Dep't of Army*, 573 F.3d 1318, 1320 (Fed. Cir. 2009) (addressing claim of veteran who unsuccessfully applied for a civilian job with the Department of the Army).[12] Therefore, the Court dismisses plaintiff's claim VEOA claim, but the Court will provide plaintiff with an opportunity to replead.

### D. CSRA

Plaintiff also asserts a claim under 5 U.S.C. §§ 2301-02, two subsections of Chapter 23 of the Civil Service Reform Act (CSRA). (*See* Opp. at 12-13.). The CSRA establishes the "exclusive remedy by which [federal] employees" can challenge personnel actions. *Tiltti v. Weise*, 155 F.3d 596, 600 (2d Cir. 1998); *see also Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 448 (D.C. Cir. 2009) ("The CSRA is also exclusive: It constitutes the remedial regime for federal employment and personnel complaints.").[13]

Section 2302 enumerates a list of "prohibited personnel practices," including discriminating on the basis of race, color, religion, sex, or national origin; coercing any employee to engage in political activity; and discriminating against an employee "on the basis of conduct which does not adversely affect the performance of the employee . . . or the performance of others . . . ." *See* §§ 2302(a)-(b).

The CSRA, however, does not provide a private right of action nor does it allow direct judicial review of agency action. Instead, employees alleging a prohibited personnel practice must take part in administrative proceedings. *Dotson v. Griesa*, 398 F.3d 156, 164 n.3 (2d Cir. 2005) ("Chapter 23 does not provide for judicial review. Rather, aggrieved employees 'are given the right to file charges of prohibited personnel practices with the Office of Special Counsel' of the Merit Systems Protection Board, 'whose responsibility it is to investigate the charges and, where appropriate, to seek remedial action from the agency and the [Board].'" (quoting *United States v. Fausto*, 484 U.S. 439, 446 (1988))); *see also Convertino v. U.S. Dep't of Justice*, 393 F. Supp. 2d 42, 47 (D.D.C. 2005) ("Nor does the CSRA itself provide any private right of action."). In contrast to Title VII, the ADEA, and the VEOA, the CSRA's exhaustion requirements are jurisdictional. *See Weaver v. U.S. Info.*

---

[12] Moreover, to the extent plaintiff's VEOA claim is premised on defendant's refusal to promote him to the GS-11 position, the Court notes that at least one of the people promoted to the GS-11 position, Max Diah, apparently was a veteran. (*See* Docket 39-1, at 11.)

[13] The CSRA does not preclude plaintiff from bringing Title VII and ADEA claims. The CSRA explicitly permits federal employees to bring those claims, irrespective of the remedies available in the CSRA itself. *See* § 2302(d); *see also Nyunt*, 589 F.3d at 448 ("When Congress wants to preserve remedies outside the CSRA, it does so expressly; for example, the CSRA maintains federal employees' rights to bring suit under Title VII and other anti-discrimination laws."). The CSRA does, however, preclude federal employees from bringing APA claims, at least where those claims relate to personnel action

taken against the employee. *See Tiltti*, 155 F.3d at 601 (affirming dismissal of APA challenge to a reassignment because CSRA precluded APA review). Here, the Court will assume, *arguendo*, that plaintiff's APA claims do not relate to personnel actions taken against plaintiff and, therefore, are not precluded by the CSRA. Instead, plaintiff's APA claims fail for the reasons set forth above.

17

*Agency*, 87 F.3d 1429, 1433 (D.C. Cir. 1996); *see also Sawyer v. Musumeci*, No. 97-9305, 1998 WL 743734, at *1 (2d Cir. Oct. 21, 1998) (summary order); *cf. Fernandez v. Chertoff*, 471 F.3d 45, 58 (2d Cir. 2006) (stating that exhaustion is not jurisdictional in Title VII cases)

Pursuant to these administrative procedures, the employee must first request an investigation by the Office of Special Counsel of the MSPB. *Rhyne v. Perry*, 91 CIV. 8691 (LMM), 1995 WL 77970, at *4 (S.D.N.Y. Feb. 24, 1995) ("An employee who alleges that he or she has been subjected to a 'prohibited personnel practice' may request an investigation by the Office of Special Counsel, which is charged with receiving and investigating such allegations."). If, after investigating, the Office of Special Counsel concludes the investigation should be terminated, the complainant is told the reason for the termination. *Tiltti*, 155 F.3d at 601 (citing 5 U.S.C. § 1214(a)(2)(A)). "'Judicial review of an [Office of Special Counsel] decision is limited, at most, to insuring compliance with the statutory requirement that the OSC perform an adequate inquiry on which to base its disposition of an employee's petition.'" *Id.* (quoting *Cutts v. Fowler*, 692 F.2d 138, 140 (D.C. Cir. 1982)); *see also Jarvis v. Cardillo*, No. 98 CIV. 5793 RWS, 1999 WL 187205, at *4 (S.D.N.Y. Apr. 6, 1999) ("Once an appeal is made to the OSC, the only judicial relief available is mandamus to direct the OSC to perform the proper inquiry."). The complainant may also appeal the OSC decision to the MSPB. *Convertino*, 393 F. Supp. 2d at 46.

Alternatively, the Special Counsel "may request the Merit Systems Protection Board . . to consider and order appropriate corrective action." *Rhyne*, 1995 WL 77970, at *4. As a general rule, the U.S. Court of Appeals for the Federal Circuit has exclusive jurisdiction to hear appeals from MSPB actions. *See Downey v. Runyon*, 160 F.3d 139, 143 (2d Cir. 1998).[14]

In any event, plaintiff has not presented any evidence that he followed—or even initiated—the CSRA's administrative procedures.[15] Therefore, plaintiff's CSRA claim is unexhausted, and the Court lacks jurisdiction to consider it. *See Perdeaux v. United States*, 33 F. Supp. 2d 187, 190 (E.D.N.Y. 1999) (dismissing CSRA claim for failure to exhaust). As such, the claim must be dismissed.

IV. CONCLUSION

For the reasons set forth above, defendant's

---

[14] An exception exists in cases involving "mixed appeals"—that is "'an appeal filed with the MSPB that alleges that part of an appealable action was effected, in whole or in part, because of discriminating on the basis of race, color, religion, sex, national origin, handicap or age.'" *Downey*, 160 F.3d at 143-44 (quoting 5 C.F.R. 1614.302(b)). As explained in the September 2008 M & O, federal district courts have jurisdiction to review THE MSPB decision's regarding mixed appeals. As noted in the earlier opinion, there is no evidence plaintiff raised discrimination claims in any MSPB decision. As such, and despite plaintiff's insistence to the contrary, the MSPB proceedings involving plaintiff were not a "mixed appeal."

[15] As discussed in the September 2008 M & O, plaintiff did bring proceedings before the MSPB. However, these proceedings were based on the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4301, *et seq.*, not the CSRA.

motion to dismiss is granted. However, plaintiff is granted leave to file a Third Amended Complaint to address, if possible, the pleading defects identified by the Court in this Memorandum and Order.[16]

The Court will conduct a telephone conference on Tuesday, April 20, 2010, at 2:00 p.m., to discuss the schedule for the filing of the Third Amended Complaint and any other issues the parties wish to address. At that time, counsel for defendant shall initiate the call and, once all parties are on the line, contact Chambers at (631)-712-5670.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: March 30, 2010
Central Islip, New York

---

[16] Although the Court has already provided plaintiff with one opportunity to re-plead after defendant's prior motion to dismiss, plaintiff has asserted additional claims that were not the subject of the first motion to dismiss, including his APA claims and his claims under the VEOA and CSRA. Moreover, plaintiff has not had the opportunity to address the equitable tolling issue under Title VII and the ADEA. Thus, the Court concludes that it is appropriate to provide one additional opportunity to plaintiff to address these issues. *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (holding that the Court should give a plaintiff an opportunity to amend if the Court cannot "rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim") (internal citations and quotations omitted).

\* \* \*

The plaintiff is proceeding *pro se.* The attorneys for the defendant USDOT are Denise McGinn, Esq. and Thomas A. McFarland, Esq., Assistant United States Attorneys, of the United States Attorney's Office, Eastern District of New York, 610 Federal Plaza, Central Islip, New York 11722.