# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

————————————

No 07-CV-2049 (JFB)(AKT)

————————————

JOSEPH R. ERCOLE,

Plaintiff,

VERSUS

RAY LaHOOD,

Defendant.

————————————

**MEMORANDUM AND ORDER**
March 29, 2011

————————————

Joseph F. Bianco, District Judge:

*Pro se* plaintiff Joseph Ercole brings this action against the Secretary of the U.S. Department of Transportation, Ray LaHood, alleging violations of Title VII of the 1964 Civil Rights Act; the Age Discrimination in Employment Act ("ADEA"); the Administrative Procedure Act ("APA"); the Uniformed Services Employment and Reemployment Rights Act ("USERRA"); the Fourteenth and Fifth Amendments; the Freedom of Information Act ("FOIA"); the False Claims Act ("FCA"); and Article 15 of the New York Human Rights Law ("HRL").

By Memorandum and Order dated March 30, 2010 (the "March 30 Memorandum and Order"), for the second time the Court granted defendant's motion to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. First, with respect to the Title VII and ADEA claims, the Court concluded that plaintiff had not adequately exhausted his administrative remedies and also had failed to state a claim. Second, with respect to the APA claims, the Court concluded that plaintiff had failed to demonstrate that he had standing. Moreover, the Court also determined in the alternative that, with respect to the APA claim regarding the use of the Melville Hall and the USMMA

Chapel, judicial review was unavailable because of the "no law to apply" exception to APA review. Third, with respect to the claim under the Veterans' Employment Opportunity Act ("VEOA"), the Court determined that it must be dismissed because, among other things, plaintiff did not exhaust his administrative remedies. Finally, with respect to the claim under the Civil Service Reform Act ("CSRA"), the Court also dismissed that claim as unexhausted. However, in an abundance of caution, the Court granted plaintiff leave to re-plead his discrimination claims to try to demonstrate that equitable tolling is warranted, and to address (if possible) the other defects identified in the discrimination claims, as well as the VEOA and APA claims.

Plaintiff filed his Third Amended Complaint on June 22, 2010. Defendant moved to dismiss plaintiff's complaint due to, among other things, plaintiff's failure to address the defects that the Court identified in its March 30 Memorandum and Order. For the reasons set forth below, the Court grants defendant's motion. Plaintiff has failed to remedy the defects in his claims under Title VII, the ADEA, and the APA that were set forth in the Court's March 30 Memorandum and Order. Moreover, as noted by defendants, there are additional defects in the Third Amended Complaint that require dismissal of the claims. Plaintiff's complaint is, therefore, dismissed in its entirety with prejudice.

I. BACKGROUND

The Court assumes familiarity with the underlying allegations giving rise to this litigation as comprehensively described by the undersigned in the March 30, 2010 Memorandum and Order dismissing the Second Amended Complaint, *see Ercole v. LaHood*, No. 07-CV-2049 (JFB)(AKT), 2010 WL 1286317 (E.D.N.Y. Mar. 30, 2010) (hereinafter "March 30 Memorandum and Order"), as well as in the September 10, 2008 Memorandum and Order dismissing the First Amended Complaint, *see Ercole v. LaHood*, No. 07-CV-2049 (JFB)(AKT), 2008 WL 4190799 (E.D.N.Y. Sept. 10, 2008) (hereinafter "September 10 Memorandum and Order").

In deciding defendant's motion to dismiss, the facts alleged in the Third Amended Complaint ("TAC") are assumed to be true and are construed in the light most favorable to plaintiff, the non-moving party. Below, the Court will summarize its most recent decision in this case—namely, the March 30 Memorandum and Order dismissing plaintiff's Second Amended Complaint—and then briefly summarize (1) the factual allegations from the Third Amended Complaint relevant to assessing whether plaintiff has corrected the deficiencies in the pleading identified in the March 30 Memorandum and Order, and (2) any other factual allegations relevant to plaintiff's new claims.

A. March 30 Memorandum and Order

In its March 30 Memorandum and Order, the Court provided instructions to

plaintiff for repleading his Title VII, ADEA, VEOA and APA claims. With respect to plaintiff's Title VII and ADEA claims, the Court gave plaintiff "one final chance to replead his discrimination claims" and in doing so, he had to (1) explain why he did not timely file a complaint with the Equal Employment Opportunity Commission ("EEOC"), thereby exhausting his administrative remedies, and (2) allege the adverse employment action he complains of and the basis for the discrimination claims. *See id.* at *8. To sufficiently replead an APA claim, plaintiff had to identify for the Court: (1) limitations on the use of the rental facilities in question (if plaintiff alleges a violation of the APA based on rental fees he was charged by defendant for using Melville Hall and the Chapel) or otherwise demonstrate to the Court that review of plaintiff's claims is somehow available; (2) that he meets the APA's prudential standing requirements; and (3) the relief sought under the APA. *Id.* at *14-15. Finally, the Court gave plaintiff leave to replead his VEOA claim, indicating that plaintiff failed to allege how he exhausted his administrative remedies before the Department of Labor as required by the statute and that it was unclear what hiring rights of the plaintiff were violated. *Id.* at *15.

## B. Allegations Regarding Exhaustion of Administrative Remedies

Plaintiff alleges various discrimination claims against defendant, in violation of Title VII and the ADEA, that relate to filling and failure to post a vacancy announcement for GS-11 positions, as well as to rental fees charged for the use of Melville Hall and the Chapel. Plaintiff alleges that he exhausted his administrative remedies with respect to these claims, as required by the Court's March 30 Memorandum and Order. In support of his argument, plaintiff traces the chronology of his complaints to the EEOC. Specifically, he states that sometime in 2002, plaintiff "attempted to file a discrimination complaint with Mr. Robert Safarik ["Safarik"], USMMA EEO Representative and Chief of Staff, but Mr. Safarik never filed" plaintiff's complaint and "ignored" plaintiff. (TAC at 5.) Plaintiff did not describe what he actually complained about to Safarik. Plaintiff alleges that he reached out to Safarik once again in 2003 to complain about unidentified issues, but was ignored. (*Id.* at 29.) After a GS-11 position became vacant on January 12, 2005, plaintiff was told that a vacancy announcement would be made, but it never was. (*Id.* at 24.) Plaintiff states that he complained to the EEOC yet again sometime after April 5, 2005, when he received a response to one of his FOIA requests from the U.S. Department of Transportation ("DOT") suggesting to plaintiff that the DOT was lying in its response. (*Id.* at 29.) Plaintiff asserts that he also submitted a "formal complaint" to the EEOC at this time, (*id.*), though he does not indicate the basis for the complaint. Plaintiff alleges that the complaint was ignored and he never received a response. (*Id.*) Plaintiff asserts that he finally received a FOIA response to one of his requests in January of 2007, which allegedly confirmed plaintiff's belief that he was discriminated

against based on his status as a military reservist. (*Id.* at 8.) However, plaintiff did not file a formal complaint with the EEOC until January of 2008, which was resolved against him in 2009. (*Id.* at 10-11.) Plaintiff does not describe the basis for the 2008 EEOC complaint, but has submitted the EEOC's 2009 judgment against him, which describes the issues raised by plaintiff as follows: "[w]hether or not [plaintiff] was discriminated against on the basis of race (Caucasian), color (White), national origin (Italian American), age (DOB 7/13/65) and retaliation for prior EEO activity when in March 2004 the [plaintiff] was not promoted to a GS-11 Contract Specialist."[1] (Docket

50.) In its judgment, the EEOC did not address whether the USMMA discriminated against plaintiff by failing to announce a GS-11 vacancy in January of 2005 and it is unclear whether plaintiff actually raised that as an issue in his 2008 complaint to the EEOC.

### C. Limitations on Use of the Chapel and Melville Hall

Plaintiff also takes issue with defendant for actions that occurred in connection with his rental of the USMMA Chapel ("Chapel") and Melville Hall (the "hall"), a building at USMMA used for events such as wedding receptions. Plaintiff asserts that the USMMA did not follow procedural requirements in determining the rental fees plaintiff had to pay. (TAC at 23.) Plaintiff does not point to limitations on the use of the Chapel and hall that would limit the USMMA's discretion in renting out the premises. Plaintiff does note in his complaint that he "clearly stated the complaint of the 'mixed case' regarding . . . Federal Acquisition Regulation violations, agency violations, agency administrative order violations, agency MAG Note violations . . . Arbitrary and Capricious action by Defendant, and other procedure, policy, and law violations as stated in the Complaint and Amended Complaint." (*Id.* at 25.) It is unclear whether the references

---

[1] Although plaintiff does not attach to the Third Amended Complaint either the 2009 EEOC judgment or his 2008 complaint to the EEOC that formed the basis of that judgment, plaintiff clearly references both documents in the complaint. In adjudicating a motion under Rule 12(b)(6), the Court may consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part and vacated in part on other grounds sub nom. Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,

395 F.3d 25 (2d Cir. 2005), *vacated on other grounds*, 547 U.S. 71 (2006). Thus, the Court may consider the 2009 judgment by the EEOC because it is incorporated in the complaint by reference.

to the MAG Note and Federal Acquisition Regulations are meant to suggest regulations limiting the scope of the USMMA's authority with respect to renting the hall and Chapel. In his opposition papers, Plaintiff notes that the USMMA violated the agency's "Bylaws for Melville Hall" but, again, it is unclear what bylaws he is referring to. (Pl.'s Opp. at 32.)

D. Procedural History

This case began on May 18, 2007 when plaintiff filed the initial complaint. (Docket 1.) Two weeks later, on June 1, 2007, plaintiff filed an amended complaint. (Docket 7.) The First Amended Complaint asserted claims under Title VII, USERRA, and FOIA.

On November 2, 2007, defendant moved to dismiss. (Docket 18.) The Court granted that motion in its September 10, 2008 Memorandum and Order. (Docket 37.) The Court however, granted plaintiff leave to replead his Title VII claim and instructed plaintiff that, if he filed a second amended complaint, that complaint needed to allege how plaintiff exhausted his administrative remedies and adequately state a claim under the statute. (*Id*. at 11.)

Six days after issuing the opinion, the Court held an in-person conference with plaintiff and defendant's counsel. (*See* Docket 38.) As set forth on the record, the purpose of the conference was to discuss the defects in plaintiff's Title VII claim in the then-recently dismissed complaint so that plaintiff could correct them in any amended complaint. The Court specifically explained

that plaintiff needed to demonstrate that he had exhausted his administrative remedies and that any future complaint needed to provide defendant sufficient notice regarding the type of discrimination alleged to have occurred. On the exhaustion issue, plaintiff advised the Court that he had an administrative complaint currently pending. The Court stated that plaintiff could either try to amend his complaint and demonstrate how he had exhausted or voluntarily discontinue the action without prejudice to refile once exhaustion was complete. Plaintiff chose to file an amended complaint.

Plaintiff filed the Second Amended Complaint on November 17, 2008. (Docket 39.) On December 15, 2008, defendant requested a pre-motion conference in anticipation of filing a motion to dismiss plaintiff's amended complaint. (Docket 42). On March 2, 2009, plaintiff submitted to the Court an EEOC judgment and order dated February 12, 2009 that disposed of his administrative claim. (Docket 50.) On April 20, 2009 the Court set a briefing schedule for defendant's motion to dismiss the amended complaint. (Docket 58.) As noted above, on March 30, 2010 the Court issued a Memorandum and Order dismissing plaintiff's claims but grating him leave to replead his Title VII, ADEA, VEOA and APA claims. (Docket 69.)

Plaintiff filed the Third Amended Complaint on June 22, 2010. (Docket 71.) On July 7, 2010, defendant requested a pre-motion conference in anticipation of moving to dismiss plaintiff's amended complaint. (Docket 72.) On July 8, 2010 the Court set a

briefing schedule for defendants' motion to dismiss. (Docket 73.) Defendant's brief in support of his motion to dismiss was filed on July 21, 2010. (Docket 75.) Plaintiff's opposition was filed on August 16, 2010. (Docket 76.) Defendant's reply was filed on September 8, 2010. (Docket 77.) The Court has fully considered the submissions and arguments of the parties.

## II. STANDARD OF REVIEW

Defendant has moved to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). The plaintiff must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

The Supreme Court recently clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. District courts are to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S.Ct. at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (internal citations omitted) (quoting and citing *Twombly*, 550 U.S. at 556-57).

Moreover, as the Second Circuit emphasized in *Sealed Plaintiff v. Sealed Defendant*, "[o]n occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds *pro se*, . . . a court is obliged to construe his pleadings liberally. . . . This obligation entails, at the very least, a permissive application of the rules governing the form of pleadings." 537 F.3d 185, 191 (2d Cir. 2008) (citations and quotation marks omitted); *see also Weixel v. Bd. of Educ. of the City of N.Y.*, 287 F.3d 138, 145-46 (2d Cir. 2002) (holding that when plaintiff is appearing *pro se*, the Court shall "'construe [the complaint] broadly, and interpret [it] to raise the strongest arguments

that [it] suggests.'" (quoting *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000))); *accord Sharpe v. Conole*, 386 F.3d 482, 484 (2d Cir. 2004).

### III. DISCUSSION

The Court construes the Third Amended Complaint as asserting the following:[2] (i) claims under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e-16, and under the ADEA, 29 U.S.C. § 631 and § 633a, relating to the alleged failure to promote plaintiff to the GS-11 position; (ii) claims under Title VII and the ADEA for discriminatory rental fees charged for use of the hall and Chapel; (iii) claims under Title VII and the ADEA for not responding to plaintiff's FOIA requests in a timely and accurate manner; (iv) retaliation claims under Title VII and the ADEA; (v) an APA claim relating to the price USMMA charged plaintiff for renting the Chapel and hall; (vi) claims under USERRA; (vii) claims under the FCA, 31 U.S.C. §§ 3729-33; (viii)

claims under the Fourteenth and Fifth Amendments; (ix) claims under FOIA; and (x) claims under the HRL, N.Y. Exec. Law §§ 290-30.[3] The Court will address each claim in turn.

### A. Discrimination Claims

As noted above, plaintiff asserts the following claims under Title VII and the ADEA: (i) failure to promote him to a GS-11 position; (ii) discriminatory rental fee charges for use of the hall and Chapel; (iii) failure to timely and accurately respond to plaintiff's FOIA requests; and (iv) retaliation prior to filing of this suit based on plaintiff's FOIA request and complaints to the EEOC. Specifically, plaintiff alleges that he:

> seeks redress from this Court since Defendant's actions caused harm to Plaintiff . . . [for] discrimination to Plaintiff for Contract Specialist [GS-11] position(s) . . . and other egregious acts against Plaintiff, including taking action to not

---

[2] In his motion papers, defendant argues that plaintiff has not sufficiently alleged a violation of the VEOA. (Def.'s Mem. of Law at 15.) However, it does not appear that the Third Amended Complaint is attempting to re-allege a violation of the VEOA. In any event, assuming *arguendo* that it is being alleged, it must be dismissed. In particular, plaintiff does not allege that he filed a complaint with the Department of Labor (DOL) or that he filed an appeal of a DOL decision and, thus, has not properly exhausted any such claim. Moreover, plaintiff has still failed to allege what hiring rights had been violated and, thus, any VEOA claim is dismissed on that alternative ground.

[3] Plaintiff appears to allege violations of 28 U.S.C. § 1367 and 28 U.S.C. § 1331. (TAC at 2, 12.) Both of these statutes are jurisdictional in nature and do not provide a substantive right of action. Section 1367 allows the Court to exercise supplemental jurisdiction over state law claims where it has original jurisdiction over federal law claims. Section 1331 grants the Court the jurisdiction to hear a case based on rights granted under other federal laws. Consequently, to the extent plaintiff attempts to plead violations of Sections 1331 and 1367, those claims are dismissed.

promote and preventing promotion of Plaintiff due to Plaintiff's military reserve status, hired two acquisition personnel above Plaintiff at [GS-11] (one of which was never a Federal civilian employee and did not meet the hiring requirements; . . .), have not announced the [GS-11] position since being vacated on January 12, 2005, and although Plaintiff's work performance appraisals have been "proficient," Defendant does not want Plaintiff in the military reserves nor care for Plaintiff as an employee due to complaint. . . . Defendant discriminated against Plaintiff based on age (Plaintiff is over 40 years), skin color, National Origin, Race, military status as a Navy Reserve (SELRES), by not timely responding to Plaintiff's FOIA and incorrectly responding to FOIA by lying to Plaintiff, by structuring the office employment positions against Plaintiff, and among other forms of discrimination as stated in paragraph ahead.

(TAC at 8-10; *see also id.* at 12 (also asserting a sex discrimination claim for failing to promote plaintiff to a GS-11 position).) Plaintiff explained that he was retaliated against "for prior EEO activity" and as "reprisal by supervisor for review of" a FOIA document requested by plaintiff. (*Id*. at 12.) This retaliation allegedly included:

restructuring the Procurement Department where Plaintiff's

employed, hiring other Procurement Department personnel thereby ignoring Plaintiff's applications, not announcing the vacated Contract Specialist position immediately above Plaintiff's position, and promoting other personnel, more specifically non-military reserve. Plaintiff was and continued to clearly be discriminated against for being a military reserve, for being an undesirable age to Defendant to be promoted, for being a Caucasian of European ethnicity, white skinned, for requesting information regarding US DOT . . . and for filing complaints against Defendant's actions.

(*Id*. at 31-32.) Plaintiff also alleged, in a conclusory fashion, that the rental fees charged by the USMMA for the use of Melville Hall and the Chapel were "discriminatory." (*Id*. at 13.)

As set forth below, plaintiff's discrimination claims must be dismissed because plaintiff has failed to satisfy the requirements set forth in the March 30 Memorandum and Order for repleading claims under the ADEA and Title VII. In its March 30 Memorandum and Order, the Court granted plaintiff one last chance to replead his discrimination claims, specifically asking plaintiff to: (1) explain why he did not timely file a complaint with the Equal Employment Opportunity Commission ("EEOC"), thereby exhausting his administrative remedies, and (2) allege the adverse employment action he

complains of and the basis for the discrimination claims. *Id.* at *8. Plaintiff has failed to satisfy these requirements. As an initial matter, plaintiff has failed to demonstrate that he exhausted his administrative remedies with respect to all of the discrimination claims he alleges. Even had he exhausted his administrative remedies, plaintiff has failed to sufficiently plead a violation of Title VII or the ADEA.

### 1. Exhaustion of Administrative Remedies

As set forth below, plaintiff failed to exhaust his administrative remedies on the discrimination claims and has failed to provide a basis for equitable tolling. Thus, plaintiff's discrimination claims are dismissed.

Before filing a lawsuit in federal court under either Title VII or the ADEA, a plaintiff must first exhaust his administrative remedies. *See, e.g., Briones v. Runyon*, 101 F.3d 287, 289 (2d Cir. 1996) (explaining that the exhaustion requirement applies to both Title VII and ADEA). For federal employees, the procedures for exhausting these administrative remedies are contained in 42 U.S.C. § 2000e-16 and 29 C.F.R. part 1614. *See also* 29 C.F.R. § 1614.103 (stating that complaints under, inter alia, Title VII and the ADEA, "shall be processed in accordance with this part").

These procedures require an employee who believes he or she has been discriminated against to take certain actions within specified time limits. Specifically, the employee must first consult with an EEO counselor within forty-five days of the allegedly discriminatory event, *see* 29 C.F.R. § 1614.105(a)(1), and then file a formal complaint within fifteen days of receiving notice that the counselor has failed to resolve the claim. *See* 29 C.F.R. § 1614.105(d). After the filing of an administrative complaint, the employee can bring a federal lawsuit only within (i) ninety days of receiving notice of a final administrative decision, or (ii) 180 days of the filing of the administrative complaint if there has been no administrative action. 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407; *see also, e.g., Gelin v. Snow*, No. 02 Civ. 9641(BSJ), 2005 WL 2456742, at *6 (S.D.N.Y. Sept. 30, 2005).

However, the 45-day time limit is subject to equitable tolling. *Bruce v. U.S. Dep't of Justice*, 314 F.3d 71, 74 (2d Cir. 2002); *Boos v. Runyon*, 201 F.3d 178, 184-85 (2d Cir. 2000) (considering whether equitable tolling should apply to 45-day time limit for contacting agency EEO counselor). "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply.'" *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003) (quoting *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)); *see also South v. Saab Cars USA, Inc.*, 28 F.3d 9, 12 (2d Cir. 1994) (noting that the principles of equitable

tolling do not extend to what "is at best a garden variety claim of excusable neglect") (citation and quotation marks omitted). The doctrine is "highly case-specific," and the "burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff." *Boos*, 201 F.3d at 184-85; *Smith v. Chase Manhattan Bank*, No. 97-CV-4507 (LMM), 1998 WL 642930, at *3 (S.D.N.Y. Sept. 18, 1998) ("[A] court must consider the equities of the excuse offered to explain the delay and may extend the limitations period if warranted.").

The Third Amended Complaint fails to comply with these procedural requirements and the time limit is not subject to equitable tolling. The key time period for plaintiff's employment discrimination claims based on failure to promote plaintiff to a GS-11 position is April 2004, when two individuals were hired to the GS-11 position, and January of 2005, when a GS-11 position was vacated but no announcement for the position was posted.[4] Plaintiff solely alleges that he formally filed an EEOC complaint twice—once some time after April 5, 2005

and once again in January of 2008.[5] Plaintiff allegedly never received a response to his 2005 complaint; a judgment was rendered against him by the EEOC based on the 2008 complaint. The 2008 complaint is clearly well beyond the time period for filing an administrative complaint with the EEOC based on plaintiff's failure to promote claims, years after the events forming the basis for plaintiff's discrimination claims took place. Thus, the only potentially timely complaint was in 2005. Plaintiff states that he "contacted EEOC and sent the EEOC questionnaire of formal complaint" sometime after April 5, 2005. (TAC at 29.) However, that complaint is also untimely even if formally filed. It was filed some time after April 5, 2005, so at least a year after the GS-11 positions were filled in April of 2004. It is also approximately three months after a GS-11 position became vacant on January 12, 2005, at the very least. In addition, even had the 2005 complaint been timely filed and plaintiff actually alleged all of the discrimination claims he raises here, plaintiff was obligated to file a federal lawsuit 180 days after no administrative action was taken on the complaint (as happened here), which plaintiff clearly did

---

[4] Plaintiff's retaliation claims are based on defendant's failure to promote plaintiff in April of 2004 and defendant's failure to post an opening for a GS-11 position when one became vacant in January of 2005. Essentially, plaintiff's retaliation claims are premised on the same facts surrounding his failure to promote claims and as a result, the same analysis applies. As discussed *infra*, plaintiff's retaliation claims are barred for failure to exhaust administrative remedies for the same reasons as plaintiff's failure to promote claims.

---

[5] Plaintiff alleges he complained to EEO USMMA counselor Safarik in 2002 and 2003. (TAC at 29.) These complaints were not formally filed and, in any event, were made prior to the events that form the basis of plaintiff's discrimination claims.

not do.[6]  *See* 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407.

Plaintiff attempts to make several arguments for why equitable tolling should apply in his case, none of which is availing here. First, he asserts that it was not until January of 2007 that he received a FOIA response from defendant that suggested to plaintiff that he was being discriminated against based on his military reservist status. (TAC at 26-28; *see also id*. at 6.) Plaintiff suggests that the document was only revealed to plaintiff in 2007, despite plaintiff's requests for that document, because defendant lied. (*Id*. at 8.) However, even assuming *arguendo* defendant had some sinister intent in not providing the FOIA document earlier, this does not explain why it took plaintiff approximately a year to file a formal complaint with the EEOC in January of 2008 after receiving the allegedly critical document proving defendant's discriminatory intent in January of 2007. Plaintiff also makes a tolling argument specific to his claim that he was prevented from applying to a GS-11 job opening when a position became vacant on January 12, 2005 because defendant

purposefully, and for discriminatory reasons, failed to post a vacancy announcement for the job. (*Id*. at 9.) Plaintiff argues that defendant essentially mislead him into believing that an announcement would be posted and plaintiff

> simply awaited Defendant announcing vacant Contract Specialist position, which Defendant stated numerous times (including upon and after Bridget Duffy resigning in January 2005 [from the GS-11 position, thereby leaving a vacancy]) that the [GS-11] Contract Specialist position would be announced and that announcement questions were being composed. But [GS-11] Contract Specialist position announcement never occurred . . . .

(*Id*. at 9, 24.) As an initial matter, it is not clear when the allegedly misleading statements were actually made to plaintiff. In any event, had plaintiff been diligent about pursuing this failure to promote claim, he should have filed a formal complaint with the EEOC well before 2008 in order to demonstrate to this Court that he acted with reasonable diligence during the period he wants tolled.[7]

---

[6] The Court notes that plaintiff does not even appear to be arguing that the 2005 complaint was timely. Plaintiff notes in his opposition papers that he "indeed exhausted his administrative remedies by receiving an Order and Judgment from the U.S. Equal Employment Opportunity Commission dated February 12, 2009." (Pl.'s Opp. at 4.) That judgment was based on a complaint filed in January of 2008. (TAC at 10.)

[7] To the extent plaintiff is arguing that he raised this issue in the 2005 complaint, which should be deemed timely, he nevertheless failed to file a lawsuit within 180 days after filing the complaint with the EEOC where, as here, no administrative action was ever taken with respect to the complaint.

Plaintiff's claim based on discriminatory rental fees charged by the USMMA for his use of the hall and Chapel has also not been administratively exhausted. In his complaint, plaintiff indicates that he was charged for the use of these premises on September 20, 2008. (*Id*. at 14.) However, plaintiff's 2008 complaint to the EEOC was formally filed in January of 2008, months before the event forming the basis of plaintiff's rental fee claim took place. In addition, the 2005 complaint to the EEOC is clearly well before the relevant time period to this claim.

Finally, plaintiff's discrimination claim based on defendant's delayed and inaccurate response to plaintiff's FOIA requests is also dismissed for failure to exhaust administrative remedies. Plaintiff alleges that he received a delayed and inaccurate response to a FOIA request in a letter dated April 5, 2005. (*Id*. at 8.) Although plaintiff filed a formal complaint to the EEOC sometime after April 5, 2005, it is unclear whether he raised the FOIA-based issues. Furthermore, even if he did raise those issues, plaintiff clearly failed to commence a suit in federal court after no administrative action was taken on his EEOC complaint for more than 180 days. Plaintiff clearly received the document he was looking for in January of 2007. (*Id*.) To the extent he argues that the defendant delayed sending him that document, and that he raised this issue in his 2008 complaint with the EEOC, the 2008 complaint was filed more than a year after plaintiff received the document he was looking for. Plaintiff has failed to explain why this Court should toll time to

deem his FOIA-based discrimination claims as timely raised.

In sum, plaintiff's discrimination claims are dismissed for failure to exhaust administrative remedies. The discrimination claim based on rental fees charged has clearly not been exhausted because plaintiff does not allege that he filed a formal complaint with the EEOC after he rented the hall and Chapel. Plaintiff's failure to promote, retaliation, and FOIA-based claims also have not been exhausted. Even if these issues were raised in the 2005 EEOC complaint, that complaint was not timely. Even if the complaint was timely, plaintiff had to file a lawsuit 180 days after no administrative action was taken and plaintiff fails to explain why he did not do that. The 2008 complaint is at least a year after the events at the crux of plaintiff's failure to promote, retaliation, and FOIA-based claims took place and plaintiff has, once again, failed to explain why this court should equitably toll the time to file the EEOC complaint until January of 2008.[8]

---

[8]    The Court notes that it is not actually clear that plaintiff even raised a discrimination claim based on the USMMA's failure to post a vacancy announcement for the GS-11 position in his 2008 complaint to the EEOC. The Court does not have plaintiff's 2008 complaint, but the EEOC's 2009 judgment on that complaint does not address the 2005 vacancy announcement issue at all. (Docket 50.)

## 2. Failure to State a Claim for Discrimination

In any event, even if plaintiff's claims were not barred based on failure to exhaust his administrative remedies, the claims would nevertheless be dismissed. In its March 30 Memorandum and Order, the Court instructed plaintiff to "allege (1) the adverse employment action plaintiff complains of, and (2) the basis for plaintiff's discrimination claim." *Id*. at *8. Plaintiff has failed to allege a plausible claim of discrimination and "'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see Gillman v. Inner City Broad. Corp.*, No. 08 Civ. 8909(LAP), 2009 WL 3003244, at *3 (S.D.N.Y. Sept. 18, 2009) (discussing pleading standards in discrimination cases following *Iqbal* and *Twombly*). Plaintiff's Second Amended Complaint failed to meet these standards, and the Third Amended Complaint fails as well.[9]

In order to make out a claim under Title VII, plaintiff must plead facts suggesting: "(1) membership in a protected class; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances supporting an inference of discrimination." *Dansler-Hill v. Rochester Inst. of Tech.*, ---F. Supp. 2d ----, 2011 WL 487848, at *2 (W.D.N.Y. Feb. 11, 2011) (citing *McDonnell Douglass Corp. v. Green*, 411 U.S. 792 (1973)); *see also Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 348 (S.D.N.Y. 2009).

To make out a claim under the ADEA, plaintiff must plead facts suggesting: "(1) he was in the protected age group; (2) he was qualified for the position; (3) he suffered an adverse employment decision; and (4) the adverse employment decision occurred under circumstances giving rise to an inference of discrimination." *Lamb v. Henderson*, No. 98 Civ. 2756(RWS), 1999 WL 596271, at *3 (S.D.N.Y. Aug. 9, 1999).

It is not clear how allegations regarding plaintiff's FOIA requests and rental fees charged for the use of the hall and Chapel can constitute an adverse employment action in violation of the ADEA and Title VII.[10] *See* March 30 Memorandum and Order at *7, n.4 ("Nor is it clear how [discriminatory rates charged for renting Melville Hall and the Chapel] constitute an 'adverse employment action,' as required by Title VII and the ADEA.")

---

[9] The Court notes that the wording of plaintiff's discrimination claims in the Third Amended Complaint is nearly identical to that in the Second Amended Complaint dismissed by this Court in its March 30 Memorandum and Order. *See id.* at *8.

[10] In addition, plaintiff concedes the fact that he was no longer working for the Department of Transportation by the time he rented the hall and Chapel in the fall of 2008. (TAC at 3 ("Plaintiff transferred as a Federal employee to the higher GS level with another Federal agency in February 2008.")

Plaintiff's allegations that he was not promoted in 2004 and 2005 to a GS-11 position because of his age (over forty), national origin (Italian-American), sex (male) and race (Caucasian) are entirely conclusory, as are plaintiff's allegations that he was retaliated against for complaining to the EEOC and for reviewing a FOIA document. Plaintiff's complaint is entirely devoid of factual allegations that would give rise to a reasonable inference that he was discriminated against based on age, national origin, sex, and race. In fact, read as a whole, plaintiff's complaint in essence bases the discrimination claims entirely on plaintiff's military reservist status despite making conclusory references to discrimination based on age, national origin, sex and race. Time after time, plaintiff focuses on receiving a FOIA document in January of 2007 suggesting that he was discriminated against based on his military reservist status. (TAC at 6-10.) Nowhere does he indicate why he believes he was discriminated against based on age, national origin, sex and race so that the Third Amended Complaint fails to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz*, 534 U.S. at 512. As the Court previously noted, military reservist status is not a protected class under both Title VII and the ADEA so that plaintiff's discrimination claims based on military reservist status are not viable. *See* March 30 Memorandum and Order, at *9, n.9. Thus, the allegations of discriminatory conduct— which are nearly identical to the allegations in the Second Amended Complaint—are once again insufficient to state a

discrimination claim, even where the plaintiff is *pro se*.[11] *See, e.g., Reyes v. Fairfield Props.*, 661 F. Supp. 2d 249, 269 (E.D.N.Y. 2009) ("No identification of particular events or facts underlying the race-based discrimination claims is set forth in the amended complaint, and thus the claim is properly dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure."); *Wei Hong Zheng v. Wong*, No. 07-CV-4768 (FB)(JO), 2009 WL 2601313, at *7 (E.D.N.Y. Aug. 24, 2009) (dismissing sex discrimination claim because complaint contained no factual allegations to support claim); *Delgado v. Triborough Bridge & Tunnel Auth.*, 485 F. Supp. 2d 453, 463 (S.D.N.Y.2007) ("A complaint consisting only of assertions, setting forth no specific facts upon which a court could find a plausible violation of Title VII, must be dismissed for failure to state a claim under Rule 12(b)(6).").

In sum, the Court concludes that plaintiff's discrimination claims must be dismissed because they have not been administratively exhausted. In the alternative, plaintiff has failed to sufficiently plead that an adverse employment action was taken against him for discriminatory reasons based on his membership in a

---

[11]    Defendant also argues that, with respect any failure to promote claim under the ADEA, plaintiff cannot state a claim because he had not turned 40 at the time of the event in 2004. However, given the other grounds for dismissal already identified by the Court, this issue need not be addressed.

protected class.[12] As the Court stated in its March 30 Memorandum and Order, this was plaintiff's last opportunity to replead his discrimination claims and plaintiff failed to satisfy the requirements set forth in the March 30 Memorandum and Order in order to make out a plausible discrimination claim.[13] Accordingly, plaintiff's

discrimination claims are dismissed with prejudice.

## B. APA Claims

The Court construes the Third Amended Complaint as asserting two APA claims. The first is based on the USMMA's policies regarding rental of the hall and Chapel. The second is based on defendant's failure to follow hiring procedures in employing individuals for the GS-11 position. As set forth below, both must be dismissed. In its March 30 Memorandum and Order, the Court instructed plaintiff to provide the Court with any limitations on the use of the hall and Chapel or otherwise demonstrate to the Court that review is somehow available and that plaintiff meets the APA's prudential standing requirements. *Id.* at *14. Finally, the Court instructed plaintiff to specify the relief sought under the APA.[14] *Id.* at *15. Plaintiff has wholly failed to satisfy these requirements.

---

[12] Plaintiff also makes a vague reference to a discrimination complaint in 2002. As to any such claim, plaintiff does not state that he administratively exhausted that claim and provides no factual allegations as to the basis for such claim. Accordingly, no claim has been stated for any alleged actions in 2002.

[13] In the middle of his complaint, plaintiff makes a reference to 5 U.S.C. § 2302(b)(8). (TAC at 25; *see also* Pl.'s Opp. at 12-13.) He states: "Plaintiff is correct to file this action with the U.S. District Court; see prohibited personnel practices, 5 USC 2302(b)(8), disclosure as Whistleblower, appendix on discrimination (military status, age, skin color, etc.)." (TAC at 25; *see also* Pl.'s Opp. at 12-13.) To the extent plaintiff is trying to assert a separate cause of action under this statute, he has made no factual allegations that the Court can discern with respect to how he believes this statute was violated. Plaintiff makes a similarly cursory reference to "violation of 5 USC [§] 2301" (and other statutes and regulations) in his opposition papers, appearing to quote from a different version of the complaint he actually filed. (Pl.'s Opp. at 13.) The Court does not construe these as separate causes of action. It looks as though plaintiff is trying to quote a different version of the complaint that is not before this Court and, in any event, he has made no factual allegations in the complaint suggesting how these statutes and regulations were violated in this case beyond simply citing

them. Accordingly, to the extent he is trying to assert a separate cause of action under this statute, that claim is also dismissed.

[14] The Court notes that despite being explicitly told that money damages are not available under the APA, *see* March 30 Memorandum and Order at *15, plaintiff once again requested "compensatory damages, including reimbursement for payments made to Defendant for Melville Hall" and other money damages without indicating what kind of equitable or injunctive relief is sought. (TAC at 14.)

### 1. Applicable Law

"[T]he Administrative Procedure Act provides that '[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof,' unless review is precluded by statute or the complained-of decision was committed to agency discretion." *Ruiz v. Mukasey*, 552 F.3d 269, 273 (2d Cir. 2009) (quoting 5 U.S.C. § 702) (internal citations omitted). The APA empowers federal courts to "compel agency action unlawfully withheld or unreasonably delayed; and hold unlawful and set aside agency action, findings, and conclusions found to be," *inter alia*, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* 5 U.S.C. § 706. Principles of sovereign immunity, however, prevent plaintiffs from seeking money damages under the APA. *See Adeleke v. United States*, 355 F.3d 144, 152 n.7 (2d Cir. 2004). *See generally* 5 U.S.C. § 702.

As noted above, plaintiff asserts that he is entitled to relief under the APA because the USMMA acted in an "arbitrary and capricious" manner in renting the hall and Chapel to plaintiff. (TAC at 13.) Further, plaintiff asserts that defendant "acted outside the scope of statutory authority" in failing to properly follow "personnel practices of the Federal government" in contracting out the GS-11 position to employees outside of the USMMA.[15] (*Id.* at

20-21.) These claim must be dismissed because plaintiff lacks prudential standing. In the alternative, plaintiff's rent-payment claim must also be dismissed because the "no law to apply" exception to APA review applies.

### 2. Standing To Bring Claim for Use of Hall and Chapel

Plaintiff has failed to indicate how he satisfies prudential standing requirements, as he was instructed to do by the Court in its March 30 Memorandum and Order. As in its March 30 Memorandum and Order, the Court will assume *arguendo* that plaintiff can meet the Article III standing requirements for this claim. However, plaintiff must also show he "'falls within the zone-of-interests sought to be protected by the statutory provision whose violation forms the legal basis for his complaint.'"

_____

[15] This claim is rehashed in its entirety from the Second Amended Complaint and was addressed in detail in the March 30 Memorandum and Order. *Id.* at *9-12. The Court adopts its comprehensive analysis in that decision and reaffirms its conclusion that even if plaintiff could establish Article III standing to challenge the USMMA's decision to use contract employees, which he had not (*id.* at *10), plaintiff cannot establish prudential standing because he "does not explicitly identify any statute that forms the basis for plaintiff's claim" and based on the Court's own research, plaintiff is "not within the zone of interests sought to be protected" by the potentially applicable statutes. *Id.* at *11-12. Accordingly, this claim must be dismissed on standing grounds in accordance with the Court's March 30 Memorandum and Order.

*Baur v. Veneman*, 352 F.3d 625, 636 (2d Cir. 2003) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990)). Plaintiff has failed to identify any such statutory provision.

Plaintiff does not indicate which statutory provision or regulation was violated by the USMMA in charging plaintiff rental fees for the hall and Chapel. Plaintiff makes passing references to the "Federal Acquisition Regulation" and "MAG Note" violations (TAC at 25), but it is unclear: (1) whether these violations relate to plaintiff's claims under the APA; (2) what plaintiff means by "MAG Note"; and (3) what specific regulations or sections were violated. Plaintiff also refers to "Bylaws" of the USMMA that were violated in renting the hall to plaintiff. (Pl.'s Opp. at 32.) However, it is unclear what bylaws plaintiff is referring to. Plaintiff states that he "served as the Treasurer of Melville Hall" and that "[t]here are limitations to Melville Hall in writing and as this action progresses Plaintiff will provide them to the Defendant if Defendant does not have them accessible . . . ." (*Id.*) However, plaintiff was specifically instructed in the March 30 Memorandum and Order that he had to allege the limitations on the use of the hall; simply stating (in a conclusory manner) that there is some document in writing that plaintiff will eventually produce is not enough.[16] Additionally, the Court's

independent research has not revealed a statute that even arguably includes the uniform pricing of facilities at the USMMA within its "zone of interests." Accordingly, this claim must be dismissed for lack of standing.

### 3. Reviewability of Claim for Use of Hall and Chapel

Even if plaintiff could establish standing, however, the Court would dismiss his claim that rental pricing was arbitrary and capricious because defendant's actions regarding pricing at the USMMA facilities are committed to agency discretion by law, and judicial review is, therefore, not available.

When a plaintiff seeks judicial review of agency action, there is a "strong presumption" that review is available under the APA. *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009). "However, review under the APA may be excepted where: (i) 'statutes preclude judicial review;' or (ii) 'agency action is committed to agency discretion by law.'" *Id.* (quoting *Natural*

---

[16] Plaintiff asserts that he already submitted an exhibit "showing some limitations as per the Melville Hall agreement." (Pl.'s Opp. at 32.) This very assertion was made to the Court with

respect to plaintiff's Second Amended Complaint. In its March 30 Memorandum and Order, the Court concluded that in its review of the exhibits attached to the Second Amended Complaint, the Court did not find any statute, regulation, or other generally applicable limitations to the use of Melville Hall. *Id.* at *15 n.11. That is also the case with the Third Amended Complaint so that, once again, the Court concludes that plaintiff has failed to point to limitations on the USMMA with respect to charging rental fees.

*Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006)); *see also* 5 U.S.C. § 701(a). The "committed to agency discretion by law" exception to APA review applies "only in 'those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Conyers*, 558 F.3d at 144 (quoting *Sharkey v. Quarantillo*, 541 F.3d 75, 91 (2d Cir. 2008)). Nonetheless, an APA plaintiff may not obtain review simply by claiming an agency acted in an arbitrary and capricious manner without identifying a statute to guide the agency's discretion. *Lunney v. United States*, 319 F.3d 550, 558 & n.5 (2d Cir. 2003) (requiring a plaintiff to "specify some statute or regulation that would limit the [relevant agency's] discretion in this matter" and explaining that the APA's "arbitrary and capricious" standard "cannot be sufficient by itself to provide the requisite 'meaningful standard' for courts to apply in evaluating the legality of agency action"); *see also Heckler v. Chaney*, 470 U.S. 821, 830 (1985) (stating that APA "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion"); *Schneider v. Feinberg*, 345 F.3d 135, 148-49 (2d Cir. 2003) ("Here, there is no law to apply because no standard of review—other than the APA's 'arbitrary and capricious' standard itself—governs.").

Here, plaintiff, again, has not identified, either in the complaint or in his opposition to the motion to dismiss, any standard that governs the defendant's actions in renting out the hall and Chapel. In its March 30 Memorandum and Order, the Court

described a number of provisions in Title 46 of the U.S. Code and in the Code of Federal Regulations that regulate the governance of the USMMA. *Id*. at *14. As the Court noted in that decision, none of the statutes or regulations described by the Court limited defendant's discretion with respect to the renting of the hall and Chapel. Instead, it appears these matters are committed to the discretion of defendant, and, as such, APA review is unavailable. *See Lunney*, 319 F.3d at 559 (finding "no law to apply" in case where plaintiff sought to have Medal of Honor transferred to recipient's alleged next of kin); *cf. Christianson v. Hauptman*, 991 F.2d 59, 62-63 (2d Cir. 1993) (finding plaintiff could obtain judicial review of National Park Service regulation regarding use of seaplanes on Fire Island National Seashore (FINS) because statute governing management of FINS "limit[ed] the scope of [the agency's] authority to the environmental preservation of the area").

Thus, plaintiff's APA claims are dismissed for lack of standing. Plaintiff's rental-based claim is, in the alternative, also dismissed on the ground that the decision how much to charge in renting the hall and Chapel is committed to agency discretion.

C. USERRA Claims

Plaintiff's USERRA claims are based on various employment-related actions taken by the USMMA (TAC at 11-12), as well as based on the rental fees plaintiff was charged for using the hall and Chapel (*id*. at 13-14). In its September 10 Memorandum and Order, the Court concluded that it did not have subject matter jurisdiction to

review plaintiff's claims that the DOT violated USSERA by hiring personnel from a private contractor while plaintiff was on military leave because any USSERA actions against the federal government as an employer are solely within the jurisdiction of the Merit Systems Protection Board ("MSPB"). *See* September 10 Memorandum and Order, at *7-8. Although plaintiff attempts to re-plead these claims, the Court again concludes that plaintiff's USERRA claims, which are based on employment-related actions taken by the USMMA, are claims against the federal government as an employer and must once again be dismissed for lack of subject matter jurisdiction. Plaintiff's USERRA claim based on rental fees charged by defendant must also be dismissed. USERRA prohibits discrimination in employment on the basis of military service. *See id*. at *7. Plaintiff's USERRA claim based on defendant's rental charges is not an employment action. As a result, plaintiff's USSERA claims are dismissed in their entirety.

## D. False Claims Act

For the first time, plaintiff asserts that defendant violated the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et. seq.* (TAC at 2.) Plaintiff has failed, however, to adequately plead this claim. "The False Claims Act, 31 U.S.C. § 3729 *et seq*., empowers the United States, or private citizens on behalf of the United States, to recover treble damages from those who knowingly make false claims for money or property upon the United States, or cause to be made, or who submit false information in

support of such claims." *United States v. Dialysis Clinic, Inc.*, No. 5:09-cv-00710 (NAM/DEP), 2011 WL 167246, at *3 (N.D.N.Y. Jan. 19, 2011). Plaintiff is not bringing an action on behalf of the United States and makes no allegations of fraud in his complaint. Therefore, plaintiff's FCA claim is dismissed.

## E. Constitutional Claims

In his Third Amended Complaint, plaintiff asserts violations of the Fourteenth and Fifth Amendments. The Court construes the complaint as alleging the following constitutional violations: (1) employment discrimination and retaliation in the course of employment (TAC at 1, 11-12), and (2) discrimination based on the rental fees charged for use of the hall and Chapel (*id*. at 13-14). Plaintiff states that defendant violated "the Fourteenth Amendment of the U.S. Constitution, providing for individual guarantees, including the Bill of Rights, and extended by the Fifth Amendment guarantee individuals have against the Federal and State governments." (*Id*. at 1-2, 12, 14.)

As an initial matter, plaintiff has failed to adequately state a claim under the Fourteenth Amendment because it applies to state actors and plaintiff brings this action against the DOT, an agency of the federal government. Therefore, the Court construes plaintiff's claims as alleging solely a violation of the Fifth Amendment. *Cf. Soundview Associates v. Town of Riverhead*, 725 F. Supp. 2d 320, 333 (E.D.N.Y. 2010) ("The complaint alleges violations by the Town of Riverhead, its administrative arms,

and its employees-state actors to whom the Fifth Amendment is applicable only through the Fourteenth Amendment. Thus, the Court construes plaintiff's claims as brought under the Fourteenth Amendment, and plaintiff's Fifth Amendment claims are dismissed.")

Plaintiff's Fifth Amendment claims for employment discrimination and retaliation in the course of employment must be dismissed as subsumed within the claims under Title VII and the ADEA. *See, e.g., Dunn v. Secretary of U.S.*, No. 5:00CV1747(HGM/GHL), 2006 WL 1510097, at *8 (N.D.N.Y. May 26, 2006) ("[T]he Court notes that Title VII is the exclusive remedy for employment discrimination by the Federal Government, and thus, Plaintiff's Fifth Amendment claim of denial of equal protection is subsumed within her Title VII claim."); *Mitchell v. Chao*, 358 F. Supp. 2d 106, 112 (N.D.N.Y. 2005) ("[T]he ADEA provides the exclusive remedy for federal employees who allege age discrimination."); *Weiner v. Drug Enforcement Admin.*, No. 90 CIV. 5368 (KMW), 1991 WL 221088, at *4 (S.D.N.Y. Oct. 21, 1991) (plaintiff's claims under the Fifth Amendment for discrimination based on his age and religious beliefs are barred because "Title VII was intended as the exclusive pre-emptive administrative and judicial scheme for the redress of federal employment discrimination." (citing *Brown v. General Services Admin.*, 425 U.S. 820, 829 (1976)) (collecting cases)). As a result, the Court dismisses plaintiff's employment-based claims under the Fifth Amendment and deems them as subsumed into plaintiff's

Title VII and ADEA claims, which have also been dismissed.

Plaintiff has also failed to state a viable claim under the Fifth Amendment based on alleged discrimination in rental fees he was charged for the use of the hall and Chapel. In order to state a claim under the Fifth Amendment, plaintiff must "establish the existence of a protected liberty or property interest." *Brown v. Equal Employment Opportunity Comm'n*, No. 83 Civ. 2531 (SWK), 1984 WL 1003 at * 2 (S.D.N.Y. Oct. 11, 1984) ("Investigation and conciliation attempts by the EEOC do not amount to liberty or property interests protected by the Fifth Amendment.") As previously noted, the rental fees charged by the USMMA are entirely within its discretion and, in any event, plaintiff has wholly failed to allege any facts stating a plausible claim that he was charged higher fees for discriminatory reasons. Therefore, this claim must also be dismissed.[17]

## F. FOIA Claims

To the extent the Third Amended Complaint could be liberally construed as attempting to re-assert some type of FOIA claim, that claim also must be dismissed. Plaintiff essentially complains of the fact that it took the DOT too long to produce the

---

[17] To the extent plaintiff is also asserting a due process claim under the Fifth Amendment when he states that his "due process right is being denied by this court not hearing this case," (TAC at 43), this Court is clearly "hearing this case" and has in fact reviewed two previous complaints by plaintiff.

document plaintiff was looking for and that at least one of DOT's prior FOIA responses was not accurate. These very claims were addressed in the Court's September 10 Memorandum and Order. As the Court noted in that decision, "although plaintiff alleges that he was lied to about certain materials and that the production of materials was delayed, it is undisputed that he eventually received the requested documents." *Id.* at *8. Therefore, "USDOT's production of the responsive document moots plaintiff's claim[s]." *Id.* Thus, any FOIA claims are once again dismissed.

## G. State Law Claim

To the extent that plaintiff also attempts to allege that defendant violated the New York State Human Rights Law ("HRL"), N.Y. Exec. Law §§ 290-301, that claim also must be dismissed. It is well settled that Title VII is the exclusive remedy for discrimination based on race, color, religion, sex, and national origin in federal employment. *See Brown v. General Servs. Admin.*, 425 U.S. 820, 829-33 (1976); *Rivera v. Heyman*, 157 F.3d 101, 105 (2d Cir. 1998) (Plaintiff's HRL employment discrimination claims could not proceed because "Title VII provides the sole remedy for federal employees alleging employment discrimination."). Similarly, the ADEA is the exclusive remedy for age discrimination in federal employment. *See Zombro v. Baltimore City Police Dep't*, 868 F.2d 1364, 1369 (4th Cir. 1989), *cert. denied* 493 U.S. 850 (1989). Therefore, plaintiff cannot sue

under the HRL in this case. Accordingly, any such claims are dismissed.

## H. Leave to Re-Plead Claims

Although no request to replead was made by plaintiff, the Court has also considered whether plaintiff should be given an opportunity to replead. The Second Circuit has emphasized that "[a] *pro se* complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quotations marks omitted). Under Rule 15(a) of the Federal Rules of Civil Procedure, "leave [to amend] shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Leave to amend should be denied only for reasons such as undue delay, bad faith, futility of the amendment or prejudice to the other party. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Aetna Casualty & Surety Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 603 (2d Cir. 2005). As noted above, plaintiff's discrimination claims are dismissed with prejudice because the Court had explicitly given plaintiff the last opportunity to replead these claims in his Third Amended Complaint. March 30 Memorandum and Order, at *6. Additional attempts to replead these claims would be futile and prejudicial to defendant. Further, as discussed in detail *supra*, it is clear from the complaint (as well as from plaintiff's submission in opposition to defendant's motion) that he does not have any possibility

of asserting plausible federal law claims having been given three opportunities to re-plead his complaint and the Court having identified in its March 30 Memorandum and Order pleading deficiencies that plaintiff had to, but failed, to cure with respect Title VII, ADEA and APA claims. *See, e.g., Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (noting that a court may dismiss an action with prejudice where "leave to amend has previously been given and the successive pleadings remain prolix and unintelligible"); *Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (finding dismissal with prejudice appropriate where the plaintiff received notice of deficiencies in complaint at time of first amendment, and, therefore, was not entitled to a "third go-around"); *Treppel v. Biovail Corp.*, No. 03 Civ. 3002 (PKL), 2005 WL 2086339, at *12 (S.D.N.Y. Aug. 30, 2005) (dismissing an action without leave to replead where "plaintiff has already had two bites at the apple and they have proven fruitless"); *Neal v. Martinez*, No. 01 Civ. 11587(VM), 2003 WL 260524, at *4 (S.D.N.Y. Feb.5, 2003) ("In the instant case, the Court is not persuaded that Plaintiffs would be able to amend the Complaint in a manner which would survive dismissal, and consequently, any opportunity to replead is rightfully denied."); *Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 500 (S.D.N.Y. 2002); *Faulkner v. Verizon Comm'ns, Inc.*, 189 F. Supp. 2d 161, 174 (S.D.N.Y. 2002) ("Because plaintiffs have not requested leave to amend, and because this Court has already allowed plaintiffs an opportunity to replead, the Amended Complaint is dismissed with prejudice."); *Rozsa v. May*

*Davis Grp., Inc.*, 187 F. Supp. 2d 123, 132 (S.D.N.Y. 2002) (dismissing action "without leave to replead" where plaintiff failed in his "second effort to state a claim"); *see also Hayden v. Cnty. of Nassau,* 180 F.3d 42, 53-54 (2d Cir. 1999) (holding that if a plaintiff cannot demonstrate he is able to amend his complaint "in a manner which would survive dismissal, opportunity to replead is rightfully denied"); *Gomes v. Avco Corp.*, 964 F.2d 1330, 1335-36 (2d Cir. 1992) ("While we ordinarily require the district courts to give substantial leeway to pro se litigants, here [the plaintiff] has already amended his complaint three times, once with the benefit of counsel. The district court was well within its discretion in denying leave to amend a fourth time."). Here, as noted *supra*, plaintiff has failed three times to present a viable federal law claim; rather, plaintiff's successive pleadings remain prolix and fail to cure the deficiencies previously identified by the Court. *See Salahuddin*, 861 F.2d at 42. Thus, even according plaintiff the "substantial leeway" afforded to *pro se* litigants, *Gomes*, 964 F.2d at 1335, the Court find that dismissing plaintiff's federal law claims with prejudice is appropriate where, for the third time, plaintiff failed to allege a viable federal law claim. It is abundantly clear to this Court that any additional attempts to replead would be both futile and prejudicial to defendant.

IV. CONCLUSION

For the foregoing reasons, the Court grants defendant's motion to dismiss the Third Amended Complaint with prejudice in its entirety. The Clerk of Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: March 29, 2011
Central Islip, New York

\*       \*       \*

The plaintiff is proceeding *pro se*. The attorney for the defendant is Loretta E. Lynch, United States Attorney for the Eastern District of New York, by: Denise McGinn and Thomas A. McFarland, Assistants United States Attorneys, of the United States Attorney's Office, Eastern District of New York, 610 Federal Plaza, Central Islip, New York 11722.